**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** _____ |
| | : | |
| **v.** | : | **DATE FILED:** _____ |
| | : | |
| **LEONARD P. LUCHKO** | : | **VIOLATIONS:** |
| **MARK C. EISTER** | : | **18 U.S.C. § 371 (conspiracy to obstruct justice** |
| | : | **- 1 count)** |
| | : | **18 U.S.C. § 1512(b)(2)(B) (obstruction of justice** |
| | : | **- 10 counts )** |
| | : | **18 U.S.C. § 1512(c)(1) (obstruction of justice** |
| | : | **- 2 counts)** |
| | : | **18 U.S.C. § 1519 (obstruction of justice** |
| | : | **- 21 counts)** |

# <u>I N D I C T M E N T</u>

## <u>COUNT ONE</u>

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

1.      Special agents of the FBI and special agents of the IRS, have, since early 2003, conducted a criminal investigation into the activities of a non-profit corporation (referred to herein as the "Organization") that was organized and managed by and through the South Philadelphia district office of a Pennsylvania State Senator (referred to herein as the "Senator"), as well as other companies and individuals associated with the Organization, including an individual identified for purposes of this indictment as the "Executive Director" of the Organization.

2.      A related grand jury investigation regarding the Organization began in approximately February 2003.  The investigation of the grand jury and of the FBI and IRS is referred to collectively in this indictment as "the investigation."

3.      Between approximately February 2003 and May 2003, the government issued grand jury subpoenas to more than 20 third-party institutions seeking financial records regarding the Organization.

4.      The investigation has focused on whether, during the period of approximately January 1, 1999 to the present, various individuals associated with the Organization have committed criminal offenses, including violations of Title 18, United States Code, Sections 371 (conspiracy), 1341, 1343, and 1346 (mail, wire, and honest services fraud), 1512 and 1519 (obstruction of justice), 1951 (extortion), and Title 26, United States Code, Sections 7206(1) (submitting a false federal tax return) and 7206(2) (aiding, counseling, or advising in the preparation of a federal tax return which is fraudulent or false as to any material matter).

5.      The investigation also has focused in part on whether and to what extent the Senator has used his authority and official position to attempt to demand and obtain payments to the Organization from two large corporations in connection with Public Utility Commission litigation that he intervened in against these corporations, and the extent to which the Senator has benefitted, both politically and personally, from expenditures made by the Organization.

6.      The investigation seeks to determine whether the Senator engaged in extortion, in violation of Title 18, United States Code, Section 1951, in demanding contributions from the two corporations.

7.      The investigation further seeks to determine whether the Organization, in violation of the restrictions placed on charitable organizations, has spent money for the Senator's personal benefit and for political activities inconsistent with the Organization's limited mission and tax-exempt status.

8.      The Senator's office and the Organization are nominally independent entities.  However, a central question in this investigation is the extent of control which the Senator exercises over the Organization, in order to direct its expenditures.

9.      In conducting this investigation, the government sought to obtain all pertinent e-mail and other correspondence involving the Senator which would shed light on the extent of his management and control of the Organization, along with other e-mail and electronic evidence concerning the other issues within the scope of the investigation.

10.      The Senator is very computer-savvy, and corresponded with his staff and others extensively by e-mail, using personal computers, laptop computers, and Blackberry communication devices.

11.      The Senator maintained an office in Harrisburg inside the State Capitol and a legislative district office on Tasker Street in Philadelphia.

12.      The Senator received computer equipment and technical support from an entity of the State Senate called Senate Democratic Computer Services (SDCS), which also provided computer assistance to the other Democratic members of the Senate.

- 3 -

13.    The Senator exercised oversight authority over the activities of SDCS.

14.    The executive director of SDCS, Person No. 4, reported directly to the Senator.

15.    Two Senate employees assigned to SDCS, defendant LEONARD P. LUCHKO and Person No. 1, were assigned to the Senator's Philadelphia district office on Tasker Street on a full-time basis in order to assist the Senator and his staff.

16.    Defendant MARK C. EISTER, another Senate employee assigned to SDCS, assisted the Senator and his staff at the Senator's office in the State Capitol in Harrisburg.

17.    A series of articles in the *Philadelphia Inquirer* began on or about November 23, 2003, concerning the Organization, and raised questions regarding the manner in which the Senator obtained funding for the Organization, including $17 million in donations by a utility company.

18.    The Senator and other members of his staff closely monitored the articles that appeared in the *Philadelphia Inquirer* and the *Philadelphia Daily News* that related to this criminal investigation.

## THE CONSPIRACY

19.    From in or about November 2003 through in or about October 2005, in the Eastern District of Pennsylvania, and elsewhere, defendants

**LEONARD P. LUCHKO and**
**MARK C. EISTER**

conspired and agreed, together and with others, both known and unknown, to commit an offense against the United States, that is, to obstruct justice by (1) corruptly persuading another person,

- 4 -

and attempting to do so, and engaging in misleading conduct toward another person, with the

intent to cause and induce a person to alter, destroy, mutilate and conceal electronic evidence,

including e-mail communications pertaining to matters within the scope of a federal criminal

investigation, with the intent to impair the electronic evidence's integrity and availability for use

in an official proceeding; (2) corruptly altering, mutilating, and concealing electronic evidence

and attempting to do so, with the intent to impair the electronic evidence's integrity and

availability for use in an official proceeding; and (3) knowingly altering, destroying, mutilating

and concealing electronic evidence with the intent to impede, obstruct and influence the

investigation and proper administration of a matter within the jurisdiction of any department or

agency of the United States, and in relation to and contemplation of any such matter, all in

violation of Title 18, United States Code, Sections 1512(b)(2)(B), 1512(c)(1) and 1519.


## **MANNER AND MEANS**

20.     It was a part of the conspiracy that, in both contemplation of and with

actual knowledge of the investigation described above, and for the purpose of destroying e-mail

and other electronic evidence in order to prevent the FBI, the IRS, and this federal grand jury

from receiving or reviewing such evidence in the course of the investigation, defendants

LEONARD P. LUCHKO, MARK C. EISTER, Person No. 1, and other persons, both known and

unknown to the grand jury (collectively, "the conspirators"), (a) systematically destroyed e-mail

communications sent to or received from the Senator and the Executive Director of the

Organization; (b) created and implemented a formal schedule to run specialized computer

programs known as Secure Clean Deep Clean and PGP Free Space Wipe that erased any trace of

deleted electronic files on computer hard drives, servers, PC cards, and other electronic storage devices; (c) instructed the Senator's employees that under no circumstances were they permitted to save any e-mail sent to or received from the Senator; (d) logged into the e-mail accounts of the Senator's employees to scan their e-mail to determine if they were, in fact, saving any e-mail relating to the Senator; and (e) deleted and wiped other electronic equipment, such as the Blackberry communication devices used by the Senator and the Executive Director, among other persons.

       21.    It was part of the conspiracy that, in carrying out these acts to destroy electronic evidence pertinent to the investigation, the conspirators acted to assure that electronic evidence relevant to the investigation and potentially harmful to the Senator and his associates was permanently deleted and therefore unavailable to the federal grand jury and the federal investigators.

       22.    It further was part of the conspiracy that the conspirators succeeded in deleting and destroying substantial amounts of electronic evidence relevant to the investigation. Specifically, the conspirators permanently erased virtually all e-mails predating 2005 which had been stored on all computers used by the Organization and its Executive Director; virtually all e-mail predating 2005 in which the Senator was a sender or recipient, which had been held on the Senator's server in Harrisburg, and on the computer equipment used by his staff in Harrisburg and Philadelphia; and virtually all e-mail referencing the Organization which was held on computer equipment used by the Senator.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its unlawful objects, the following overt acts, among others, were committed in the Eastern District of Pennsylvania, and elsewhere:

1.     On or about December 1, 2003, defendant LEONARD P. LUCHKO wrote an e-mail (a copy of which was sent to the Senator) to 24 members of the Senator's staff and Senate contractors in Philadelphia, including the Executive Director of the Organization, who also was the Senator's deputy chief of staff at the time:[1]

> This is to inform all of you that under ANY circumstance are you to save any email from or to the Senator.  This would include all mail you receive from him in your "IN" box and all mail you sent to him that is stored in your "Sent Items".  If you need help getting rid of this mail or you need help checking your "IN" Box or SENT ITEMS Box contact [Person No. 1] or myself.

2.     On or about December 1, 2003, the Executive Director replied directly to defendant LEONARD P. LUCHKO in response to this e-mail, and inquired, "What's this about again?"  LUCHKO then replied to the Executive Director as follows:

> [The Senator] called me into his office today and told me to start going around and checking everyone's Computer and make sure they were not saving his mail.  I am just sending this email to give everyone a heads up.  He also told me to check for sensitive Excel files but I am not doing that because how the hell I am supposed to know what is or is not sensitive.

3.     On or about Sunday, January 25, 2004, in response to the *Philadelphia Inquirer* front-page article headlined, "FBI Probes [the Senator's] Deal" and concerns that the Senator was under investigation by the FBI, defendant LEONARD P. LUCHKO and Person No.

---

[1]     All of the e-mails and other materials quoted in this indictment bear the same spelling, punctuation, grammar, etc., as found in the originals of these documents, except where brackets have been used in order to exclude the actual names of uncharged persons and entities from appearing in the excerpt.  For example: [the Senator].

1 (LUCHKO's colleague on the computer staff in the Senator's Philadelphia office), traded e-mails in which LUCHKO asked if Person No. 1 had a scanner available. Defendant LUCHKO wrote at approximately 2:14 p.m., "Bring the scanner to work he waants me to keep a scanner at home because I am on 24 7 call. I am on my way to Work now to scan articles out of the Sunday paper." Person No. 1 then asked, "What's the big deal with the paper anyway," and LUCHKO answered, "He is being investigated by the FBI."

       4.    At approximately 10:20 p.m. on Sunday, January 25, 2004, defendant LUCHKO sent an e-mail to many staff members and Senate contractors, with a copy to the Senator. It stated:

> The Senator asked me to inform the staff that until further notice we will be stepping up security.
> • All email sent to [the Senator] until further notice should be sent using PGP.[2]
> • Anyone who is currently using a Blackberry is to refrain from sending ANY sensitive information on it.
> • Anyone who is using a Blackberry is to set up a time with [Person No. 1] or myself so we can wipe them.
> • Anyone who is using a Laptop is to set up a time with [Person No. 1] or myself so we can run security updates.
> If anyone has ANY questions contact [Person No. 1] or myself and we will be happy to answer them for you.

_____

    [2]    PGP, an acronym for "Pretty Good Privacy," is a program that allows e-mail users to encrypt their e-mail correspondence and provides users with the ability to "wipe" or permanently erase deleted e-mail from the hard drive of their computers. A "wipe" involves the use of a program to assure that deleted e-mails and other files cannot be recovered from a computer. When a computer user empties his or her deleted items folder, all or part of such a document may and usually does remain in "unallocated space" on the computer's hard drive, and remains there unless that space is later used. A "wipe" endeavors to scramble the entire unallocated space so that no deleted materials may be recovered. A "DOD wipe" refers to a wipe meeting Department of Defense standards, which involves seven passes on the hard drive to assure that nothing recoverable remains.

5.      At or about the same time on Sunday, January 25, 2004, defendant

LEONARD P. LUCHKO sent a separate message to Person No. 1, defendant MARK C.

EISTER, and Person No. 11:

> The FBI probe into the Senator has really set him off he wants us to do a number of
> security checks starting tomorrow.  Mark I told him you were in training but he wants you
> to check all of our machines in Harrisburg and the servers as well.  Perhaps we can get
> [Person No. 11] to check his personal computers and you can check the other stuff when
> you get back from Training.  He wants all of the Blackberries wiped and [Person No. 1]
> and I have to bring in all laptops and do DOD wipes on them etc.  Shit has defiantly hit
> the fan.

6.      On or about Sunday, January 25, 2004, Person No. 11 responded: "I will

take care of the personal pc's in harrisburg tomorrow.  Mark - give me a call tomorrow and we

can discuss the best way to go about taking care of the other stuff."

7.      At approximately 10:29 p.m. on or about Sunday, January 25, 2004,

Person No. 11 authored an e-mail to defendant LEONARD P. LUCHKO in which he inquired

whether LUCHKO had sent the e-mail instructing staff to delete the Senator's e-mail to the

Senator's staff members in Harrisburg, to which LUCHKO then responded four minutes later:

"Just our staff in Philly.  I don't know who has what equipment in Harrisburg."  Person No. 11

replied two minutes later and stated: "Neither do I . . . I will have to get with Mark and make sure

we get this message to the staff."

8.      On or about Monday, January 26, 2004, the Senator wrote to Person No. 1,

defendant LEONARD P. LUCHKO, and defendant MARK C. EISTER:  "As I was encrypting a

simple e-mail to [the Executive Director of the Organization] the program shut down.  This has

not happened in a while but now that we are stepping up security I will be using PGP a lot

more!"

9.    On or about January 27, 2004, when defendant LEONARD P. LUCHKO stated that he was working on the Senator's e-mail problem, the Senator wrote, "For some reason it is working much better now! ???  Maybe the Feds have finished setting up their taps! :-)"

10.    On or about January 27, 2004, defendant MARK C. EISTER then wrote, "I updated the email gateway software.  That was the fix."  The Senator replied, "OK But maybe I am paranoid but how did it happen in the first place and what security measures do we currently have in place both physical and electronic???"  Defendant LEONARD P. LUCHKO wrote, "[Person No. 1] and I have no idea what security is in place in Harrisburg that would be a question for Mark."  The Senator responded, "Well get on it NOW!!!"

11.    On or about January 27, 2004, defendant MARK C. EISTER then wrote a long e-mail evaluating the problem.  He said, "I wish I was in the office this week but this training is security training and will be very usefull in the current situation.  I have a few new ideas on securing the network from just the past two days."  EISTER explained that the Senator's e-mail traffic had been "safe" through the domain utilized by the Senator, but that use of cable modems had created problems.  "If email gets locked down by ISPs due to spam concerns and you must use their email server you are vulnerable to Carnivore email scanning by the feds."  EISTER proposed a solution, and the Senator replied, "I don't understand a lot of this because it is beyond my Computer competence and I have no idea what a VPN connection is but if it enhances security then let's go with it ASAP!!!!"

12.    On or about January 27, 2004, at approximately 9:39 a.m., in response to a complaint by defendant MARK C. EISTER that his Blackberry could not receive messages,

defendant LEONARD P. LUCHKO wrote to EISTER, "OK I was able to wipe most of our

Blackberries without incident."

13.     On or about February 12, 2004, at approximately 9:05 a.m., defendant

LEONARD P. LUCHKO wrote an e-mail to the Executive Director of the Organization in which

he stated, "I am going to have to get my hands on your Blackberry in order to wipe it I have to

then resync it over here when is a good time for me to come and get it."

14.     On or about March 4, 2004, defendant LEONARD P. LUCHKO

corresponded with an executive at the company that makes the PGP software, and inquired

whether, following a "7 Pass PGP free space wipe," someone could tell when the wipe was run:

"f I wiped a computer and the next day someone confiscated would they be able to tell it was

wiped at all?"  The executive replied that an examiner would see that the drive was wiped given

the absence of data.  The executive wrote:  "I can't help you . . . Lets hope they are not

sophisticated enough to notice."[3]

15.     Between on or about March 4, 2004 and on or about March 9, 2004,

defendant LEONARD P. LUCHKO had additional, similar correspondence with other PGP

employees, and stated that the wipe in question was run on Wednesday, March 3, 2004.  Another

---

[3]     When the PGP Free Space Wipe utility is executed, a temporary file is created.
This temporary file contains random characters which are used to over-write unallocated clusters
and file slack.  When created, all date and time stamps are captured, i.e. "Creation," "Modified,"
and "Accessed."  The temporary file name "pgpwipepattern.tmp" is normally deleted upon
completion of the wiping process.  However, the file name, attributes, and content are
recoverable through expert forensic analysis.  Therefore, it is possible to determine the last date
on which the PGP Free Space Wipe utility was executed even though the wiping process over-
writes the hard drive and results in the deletion of even the temporary PGP file.

PGP employee wrote, "There would be no data older than last Wednesday, which would make a sophisticated party suspicious that a wipe might have been run."

16.    On or about March 9, 2004, in response to a *Philadelphia Inquirer* article headlined, "Prosecutors widen probe of [the Senator's] deals," which reported on grand jury subpoenas issued to a utility company, the Senator's communications and political consultant, Person No. 2, e-mailed the article to the Senator that same day and an exchange of e-mail ensued concerning the article and the fact that the utility company – not the Senator – had received grand jury subpoenas.

17.    On or about April 6, 2004, defendant LEONARD P. LUCHKO wrote an e-mail to Person No. 1 regarding the computer equipment assigned to two of the staff members of the Senator: "I ran pgp wipe on maryann Jamie and [the Senator's] PC make sure they finished."

18.    On or about April 28, 2004, the Organization and its Executive Director received a grand jury subpoena requesting, among other things, e-mail communications among and between the Senator, the Organization's Executive Director, and other persons regarding, among other matters, the approval and payment of certain expenses incurred by the Organization.

19.    Within just a few days after the April 28, 2004 grand jury subpoena was served on the Organization, the Senator had in his possession a copy of the subpoena and spoke to a close friend, Person No. 14, about the subpoena.

20.    In response to the grand jury subpoena, the Executive Director and the Organization produced, between on or about June 14, 2004 and on or about August 6, 2004, more than 10 boxes of records, including original invoices, checks, and bank records, but made

no search of any of its computer equipment, e-mail exchange server, or other electronic media,

even though such evidence was specifically requested in the grand jury subpoena.

21.    During the time that the Organization was gathering its records in order to

attempt to respond to the grand jury subpoena, on or about May 5, 2004, defendant LEONARD

P. LUCHKO caused the district office computer of Person No. 9, a member of the Senator's

Philadelphia office staff, to be wiped using the PGP wipe utility.

22.    On or about May 5, 2004, defendant LEONARD P. LUCHKO caused the

district office computer of Person No. 6, another member of the Senator's Philadelphia district

office staff, to be wiped with the PGP wipe utility.

23.    On or about May 6, 2004, a date on which the *Philadelphia Inquirer* and

*Philadelphia Daily News* both reported that additional grand jury subpoenas were being served

on a number of persons and entities concerning matters relevant to the investigation, defendant

LEONARD P. LUCHKO caused  a PGP wipe to be run on the Senator's office computer on

Tasker Street.

24.    On or about May 10, 2004, defendant LEONARD P. LUCHKO wrote to

Person No. 5, an aide to the Senator:

> You need to clean your mailbox up.  You have over 1200 unopened emails and you also
> have email to and from the Senator you absolutely have to get rid of that.  If you want we
> can set your laptops up to pull mail that way you wouldn't accumulate so much mail on
> the main PC but that mail from the Boss needs to be deleted!

After Person No. 5 apologized, LUCHKO wrote, "You really have to clean your mailbox up this

is the kind of shit that can get us in trouble."

25.    On or about May 21, 2004, the *Philadelphia Inquirer* published an article with the headline "[The Senator's] Probe Moves to Harrisburg" and which stated in part: "Federal investigators have extended their probe into [the Senator's] dealings to the state Capitol, where FBI agents this week began trying to unravel the taxpayer grants the powerful legislator helped funnel to a Philadelphia maritime museum." In the days and weeks following publication of this article, defendants LEONARD P. LUCHKO and MARK C. EISTER, along with other persons, both known and unknown, began to focus and intensify their efforts to delete e-mail and wipe computers in the Senator's Harrisburg office.

26.    On or about May 25, 2004, defendant LEONARD P. LUCHKO wrote to Person No. 4, the supervisor of Senate Democratic Computer Services in Harrisburg:

> The Senator wants us to get some type of utility to really clean our PC's and laptops we are currently using PGP Free Space wipe and that works well but he wants us to be able to do a more thorough cleaning Registry Keys orphan files etc. We also have to be able to use it on active computers.

LUCHKO then suggested that SecureClean is a good product, and Person No. 4 replied to ask how many copies he wanted.

27.    The SecureClean[4] wipe program was purchased, installed, and used by

defendants LEONARD P. LUCHKO and MARK C. EISTER, among others, to wipe computers

and PC cards of the Senator's staff in both Harrisburg and Philadelphia.

28.    On or about June 7, 2004, just four days after FBI and IRS agents

requested that the Organization produce more than ten boxes of records to the grand jury,

defendant LEONARD P. LUCHKO wrote to defendant MARK C. EISTER,

> The Boss said the one thing he wants done in Harrisburg is to make sure email to and
> from him is deleted on a Weekly basis so whatever you put in your email to him and me
> make sure that is addressed.

29.    On or about that same day, June 7, 2004, Person No. 4 wrote to defendant

LEONARD P. LUCHKO, "Is [the Senator] there?"  When LUCHKO replied that he was, Person

No. 4 answered, "good - because [Person No. 1] shared with [Person No. 12, an employee of

SDCS] that 'HE' was driving him nuts and I figured it was you -- must be [the Senator]."

LUCHKO replied, "Boss is driving us ALL nuts with this FBI madness.  I life just got so

complicated it isn't even funny and the killer is I can't tell anyone about it."

30.    During this same time period, in a June 8, 2004 e-mail exchange between

the Senator and one of his political consultants, the Senator wanted his political consultant to try

to find out from an attorney representing one of the companies that settled PUC litigation against

---

[4]    With respect to SecureClean, when this wiping utility is executed, a temporary file
is created.  When created, all date and time stamps are captured, i.e. "Created," "Modified," and
"Accessed."  The temporary file named "SC00###.T~P" is deleted upon completion.  The file's
name and attributes appear to be the only recoverable traces of its existence.  This would indicate
the temporary file is created, deleted, and wiped by its own function.  The file's name and
attributes are recoverable only because this data resides in a different location on the hard drive.
In addition, SecureClean log files are created when the utility is executed and it is therefore
possible to determine the dates on which the utility is run.

the Senator, which litigation is a subject of this investigation, what its employees were telling the

government.  When the political consultant reported back to the Senator that the attorney would

probably not tell him anything because of concerns about attorney-client privilege, the Senator

responded angrily:

> I understand that.  That is what they told our guys already!!!  FRIENDS are supposed to
> help FRIENDS!!!  Not give them that kind of bullshit!!!  NO ONE is ever going to tell
> the fucking client AnYTHING!!!  But if that is the way they want to be to a freind then
> fuck them.  Ask anyway, so that we will know if we have a future friend or an enemy in
> your current friend!!!  There is no middle ground on this one!!  You know how serious
> and almost life threatening this is.  So let them know that and if they still want to fuck us
> or stand by and watch as we get fucked then so be it.  We will nevver forget.  One way or
> the other.  And right now they owe us big time!!!  TY.

      31.     On or about June 7, 2004, Person No. 4 sent an e-mail a few minutes later

stating:

> Just say the word and we'll get what you need.
> Don't you think there is a self destruct software that your PC goes belly up and writes all
> over itself if you don't key in a password every 48 hours? -
> How imminent is this threat?

Defendant LEONARD P. LUCHKO answered:

> I really don't want to go into it what you don't know can't hurt you we have everything
> under control its just going to be a real pain for [Person No. 1] and I.  That's just the way
> it has to be for now they (FBI) won't be around forever.  Then we can go back to our
> normal routine.

Person No. 4 then stated:

> Can you give me anything that we should be doing here that is imperative.  We are doing
> no backups -- but as far as the people -- they are difficult to control what they have on t
> heir own PC's.

Defendant LEONARD P. LUCHKO replied:

> I already had a talk with Mark, [the Senator] actually wanted me to go up there for 3 days
> and make recommendations to him I told him no (Can you believe that) I said Mark

- 16 -

knows what has to be done and he will send him ([the Senator]) an email tomorrow he
asked me about Mark's loyalty and I told him it is impeccable because in my opinion it is.
[The Senator] is REALLY concerned about the [Senator's] Staff in Harrisburg holding
email to and from him we are not allowed to do that down here and Mark has a plan in
motion.

32.    Later that evening, at approximately 7:28 p.m. on or about June 7, 2004,

defendant LEONARD P. LUCHKO wrote an e-mail to Person No. 4 titled "Venting,"

complaining that an unspecified personal emotional problem and "this FBI crap on top of that"

made it "one of the toughest days I ever had at work."  He continued:

He has us doing stuff that I know is going to come back and bite us in the ass.  Example
we had a perfect I mean perfect system for backing up the PCMCIA card with all of the
Quicken, CERS, FFS everything and I had to destroy that system.  I created that system
and destroying it REALLY hurt because I know something is going to happen and we are
going to have to go back and look at something and boom were screwed and you know
who takes the heat when Data Processing things get messed up US!  I am walking 1
backup tape in at a time and then bringing it home I am literally walking around with files
in my pocket.that's insane, hopefully this will blow over soon but right now I am stressed.
I don't blame the Senator the FBI is really coming at him hard and he is innocent I truly
believe that or I wouldn't do this I have delt with the FBI before at the Navy Yard and
when they can't find anything wrong they try to manufacutre stuff so they can justify the
man hours and money spent on a fruitless investigation.

Later, LUCHKO added regarding this e-mail, "delete it after you read it."

33.    At the time that defendant LEONARD P. LUCHKO was forced to destroy

the backup system, the Senator decided that he was going to do all of his backups by himself and

that the Senator's old PC cards would be wiped in order to insure that none of the deleted files on

the old cards could be recovered from the new card onto which the Senator's active files were

being copied.

34.    On or about June 8, 2004, Person No. 4 wrote an e-mail sympathizing with

defendant LEONARD P. LUCHKO, and offering an ear.  She concluded:

WE have our job cut out for us today - I am concerned about security up here - staff here don't listen at all - staff has months of email and won't listen to deleting it - they just don't seem to care.  If by days end we aren't satisfied and have backing from [the Senator] to just erase stuff for them, we might need you - I am having Mark rewrite the email to [the Senator] to get some nitty gritty to the point stuff across and we'll go from there.

LUCHKO answered:

[The Senator] is going to give you authority to do anything you want that's what he did with me.  He REALLY wants that mail gone.  The way it worked down here was if Senior staff had to keep mail for a reason such as they needed it to reference a job request or a purchase they had to check with him and he would say if it was OK but anything else he wants gone.
Put it to them this way if [the Senator] goes done we all go down it worked down here.

35.     On or about June 8, 2004, defendant LUCHKO also wrote:

Boss didn't think to ask you about this yesterday.  What do you want to do about PITS[5] electronically there is very little I can do it's a stand alone Network if they (FBI) come in they have what is there I have no idea what Trish keeps upstairs as far as Hard Copy but all those filing cabinets look full to me and she has all kinds of Floppy disks up there and I have no idea what they are for.  I asked her if she has any sensitive data on her PC and she said no.

36.     On or about June 9, 2004, the Senator saved onto his PC card a June 8, 2004 memo prepared by defendant MARK C. EISTER in which EISTER began by stating: "Senator, I've worked with Lenny and [Person No. 4] to address security concerns for your Harrisburg staff and email server.  Below is a capsule of current practices and questions for clarification."  The memo to the Senator then described a number of things of significance to this investigation.  EISTER noted that "[t]here is no retention policy in place so mail can be stored indefinitely."  EISTER also stated that, "[w]ith the current server configuration; deletion of email

---

[5]     PITS is a specialized database of campaign finance information that is maintained for the Senator by an outside Senate contractor and which the Senator uses to track campaign contributions to public officials throughout Pennsylvania.

is the user's responsibility.  Email is <u>never</u> backed up."  In noting the then-existing situation

concerning e-mail and the lack of a retention policy, EISTER stated the following to the Senator:

> We want to enforce an email retention policy.  If you approve I can verify email is deleted
> by logging into individual email boxes to look until I can come up with an automatic
> deletion procedure.
>
> With a new email policy how do I handle old email currently in users Inboxes?  Do I ask
> them to clean it up or just delete all old email past a certain date?  I recommend we
> announce all email older than 7 days will be deleted in 48 hours.  That gives them a
> window to make notes of what they need to but not enough time to procrastinate and
> forget about it.
>
> * * *
>
> Desktops are subject to the following weekly maintenance:
> -    Email folders are compacted to reduce the chance of old email being
>       available for recovery.
> -    Recycling Bins are emptied on the Desktop and in email clients.
> -    Hard disk cleansing programs will be installed and used to erase the
>       freespace of a hard drive of any old data.

   37. As stated in this e-mail, at or about this time, defendant MARK C.

EISTER discussed with defendant LEONARD P. LUCHKO and Person No. 1 the importance of

deleting e-mail from the Senator's Harrisburg server, as part of the effort to assure that e-mail

involving the Senator could not be found at any location.

   38. On or about June 9, 2004 at approximately 9:34 p.m., defendant MARK C.

EISTER wrote an e-mail to the Senator in which he stated: "Senator, I assume you have reviewed

the Harrisburg staff and server security notes by now and no response is tacit approval.  I?d be

happy to meet to review any questions or concerns you may have.  A few words are often clearer

than long emails.  Thanks, Mark."

39. Approximately ten minutes later on or about June 9, 2004, the Senator responded to defendant MARK C. EISTER and stated: "Please review this with Lenny and get his input as well. Then we will QUICKLY develop a strategy!" At approximately 10:13 p.m. that same evening, defendant LEONARD P. LUCHKO e-mailed defendant EISTER and asked whether the Senator was able to read the file that EISTER sent to the Senator, to which EISTER responded: "Yes. The email to you was his response after reading it."

40. On or about June 10, 2004, defendant MARK C. EISTER caused a wipe to be run on one of EISTER's desktop computers using PGP Free Space Wipe.

41. On or about June 11, 2004, defendant LEONARD P. LUCHKO caused a wipe to be run on LUCHKO's office computer at the Tasker Street office using SecureClean.

42. On or about June 14, 2004, at one of the regular Monday staff meetings that occurred in the Senator's office in the State Capitol, defendant MARK C. EISTER instructed the Harrisburg staff members that they should delete all e-mail to and from the Senator, and explained that, if a staff member sends an e-mail to the Senator, he or she should then go into the "Sent Items" folder in their e-mail program and delete that e-mail to the Senator.

43. Defendant MARK C. EISTER also told the staff at the June 14, 2004 staff meeting that he would be inspecting each person's computer to make sure that everyone was following this instruction and also to ensure that each staff member's "Deleted Items" folder was being compacted or emptied.

44. On or about Monday, June 14, 2004, in an e-mail exchange between defendants MARK C. EISTER and LEONARD P. LUCHKO, defendant EISTER reported to LUCHKO that: "I made the announcement this morning at the [Senator's] staff meeting and I'm

not the most popular person with the staff right now," to which LUCHKO responded: "This is what I do whenever I have to pass something that is unpopular with the staff I put it all on [the Senator] and that seems to keep everyone civil to me. It REALLY works."

45.    Also, on or about June 14, 2004, defendant LEONARD P. LUCHKO wrote another e-mail to Person No. 5, an aide to the Senator, indicating that LUCHKO was again not pleased with the results of his review of Person No. 5's e-mail files:

> The Server did a scan on everyone's PST and found your PST file had a total of 249 emails in it that were to or from the Senator.
> 156 IN Box emails to [the Senator's e-mail address]
> 93 SENT ITEMS email to [the Senator's e-mail addresses]
> You have to address this TODAY because the next email I sent you he gets CC on because [the Senator] wants the results of these scans and I really don't want to do that. Please Advise

46.    Person No. 5 responded on or about June 14, 2004 as follows: "Please tell me what I need to do. Do I need to come into the office? I'm in conshohocken for the access course." Defendant LEONARD P. LUCHKO then replied, "I can delete them for you," to which Person No. 5 responded, "Please Do! Thank you!!" LUCHKO then responded: "Just make sure you check both of your laptops. Also make sure you check for mail that was CC to [the Senator's e-mail addresses] that hasd to be deleted also."

47.    Following this e-mail exchange on or about June 14, 2004, defendant LEONARD P. LUCHKO caused e-mail related to the Senator, *i.e.* e-mail communications sent to, received from, or copied to the Senator, to be deleted from the e-mail accounts of Person No. 5.

48.    At approximately 10:01 p.m. on or about June 14, 2004, defendant LEONARD P. LUCHKO wrote an e-mail to defendant MARK C. EISTER, which stated in part:

How did you.make out with your security measures?  He had us delete every email I ever sent him received from him or CC and it killed me to do it because it was all technicle stuff that I use for rreference.  Everybody down here did the same thing.  He is serious about this emial thing.  I could care less if the FBI came in tomorrow and took every PC in the place.

49.    On or about June 14, 2004, defendant LEONARD P. LUCHKO caused the

SecureClean wipe program to be run on the Executive Director's desktop computer at the

Organization's office.

50.    On or about July 25, 2004, defendant MARK C. EISTER wrote to

defendant LEONARD P. LUCHKO:

The server has not been wiped in 3+ weeks.  The users are emailed to remind them they will be email audited and to keep things clean.  I have made a walk through of the office to check the inboxes but people were out that day so I have no seen every inbox for sometime now.

51.    On or about August 6, 2004, defendant LEONARD P. LUCHKO caused a

SecureClean wipe to be run on the Executive Director's Organization computer and PC card.  On

or about the same day, LUCHKO caused such a wipe to be run on one of LUCHKO's computers

at the Tasker Street office.

52.    On or about August 7, 2004, defendant LEONARD P. LUCHKO wrote to

defendant MARK C. EISTER:

this weather we have been having is so lousy I have been running extra security checks on everyone's webmail (can't be too careful) you will be happy to know that no one from Tasker Street or our mobile users is storing mail on the server and everyone at the office is getting rid of [the Senator's] mail ASAP.  How are you making out up there?  How's the new house coming along?

53.    On or about August 7, 2004, defendant MARK C. EISTER replied, "Staff

is being very good about the email.  There are a handful of e-mails when I do the check but they

are always recent," to which defendant LEONARD P. LUCHKO responded about ten minutes

later: "I know at first It's a pain everyone gives you dirty looks at first but once everyone starts

cooperating then its fine and now you have a very tight ship and one less thing to worry about."

      54.    On or about August 7, 2004, defendants MARK C. EISTER and

LEONARD P. LUCHKO then exchanged e-mails about the security of the Blackberry server.

EISTER wrote a long message about how that server stores and overwrites files, to which

LUCHKO replied, "Wow that sounds really secure so if The FBI were to seize that server all they

would see would be the last email to pass through is that correct?"

      55.    On or about August 26, 2004, defendant LEONARD P. LUCHKO wrote

an e-mail to the Senator's chief-of-staff in Philadelphia in which he reported his concerns that

Person No. 13, a Senate employee in Philadelphia, was not deleting e-mail to or from the

Senator:

> [Person No. 13] called us yesterday to see if we could fix the PC she has at her office.
> The hard drive was bad but we managed to recover most of her files.  She is ordering a
> new PC and in the meantime we are moving her files to her laptop.  While I was setting
> her laptop up and moving the recovered email from her bad hard drive I noticed she had
> quite a bit of [the Senator's] mail on both the laptop and the file we recovered from her
> PC.  All of the mail was from 10-2001 to 5-2002 which leads me to believe we didn't
> recover all of her email from the bad hard drive but it also tells me that she is not deleting
> the Senator's mail like she is supposed to I deleted all of it and wiped the Outlook file to
> remove all traces.  There is no way I can check to see if she is holding more recent mail
> on her machine at home.  I am supposed to notify the Boss if anyone is holding his mail
> but if I do he is going to go through the roof and I don't want to get anybody in trouble.  I
> have told [Person No. 13] just like I have told everyone else not to save the boss's mail
> evidently she is not listing to me can you talk to her about it or should I just tell the Boss
> and let him deal with it PA.
>
> PS She is not the only one that uses this machine up at that office so any [of the
> Senator's] mail she saves is available to anyone who has access to the computer.

56.    On or about the next day, August 27, 2004, the Senator's chief-of-staff replied: "I will talk to her.  Also I'm going to tell her you will check he units periodically until I'm assured she is complying with policy.  Please see me about this.  TY."

57.    On or about October 28, 2004, defendant LEONARD P. LUCHKO sent an e-mail to all of the Senator's Philadelphia staff, several Senate contractors, and the Executive Director of the Organization, with a copy to the Senator:

> This is a reminder to EVERYONE that under no circumstances are you to save any email in your IN box or Sent Items that is sent to or received from [the Senator].  If you have mail that you think you need to save you have to contact [the Senator] and ask him about it.  If you need help getting rid of your mail or just checking to see if you have any mail that you shouldn't have contact Lenny or [Person No. 1].
>
> PS Make sure you clean out your "Deleted Items" as well.

58.    On or about November 6, 2004, defendant LEONARD P. LUCHKO caused the file server at the Senator's district office on Tasker Street to be wiped using PGP Free Space Wipe.

59.    On or about November 15, 2004, defendant LEONARD P. LUCHKO wrote a message to defendant MARK C. EISTER which stated, in part:  "He is back on the email kick he had me check every PC in here to make sure no one is saving his mail.  How are you making out with that up there?"  EISTER responded, "People are doing a really good job of policing themselves.  That makes me happy."  LUCHKO answered, "I would let [the Senator] know."

- 24 -

60.    On or about December 9, 2004, defendant LEONARD P. LUCHKO
caused a SecureClean wipe program known as "Deep Clean" to be run on the desktop computer
and PC card of the Executive Director of the Organization.

61.    Between on or about December 8, 2004 and on or about February 4, 2005,
defendant MARK C. EISTER caused eight of the desktop computers located at the Senator's
Harrisburg office to be subjected to operating system software upgrades to Microsoft Windows
XP, which had the same effect as a wipe.  The procedures utilized to upgrade the Harrisburg
office computers' operating systems also made it impossible to determine if and when a wipe
utility was installed or executed on those computers prior to the upgrade taking place.

62.    On or about December 29, 2004, defendant LEONARD P. LUCHKO
caused Person No. 1's computer at the Senator's district office to be wiped using the PGP wipe
utility.

63.    On or about December 30, 2004, defendant LEONARD P. LUCHKO
caused the district office computer of Person No. 8, a member of the Senator's Philadelphia staff,
to be wiped using the PGP wipe utility.

64.    On or about January 19, 2005, government counsel sent a new subpoena to
the Organization, along with a letter to its counsel, a copy of which was provided to the
Executive Director of the Organization, explaining the paucity of e-mail produced in response to
the April 28, 2004 subpoena.  The letter stated in part the following:

> In reviewing all of the records that your client, [the Organization] produced in response to
> the grand jury subpoena, we noticed that very little in the way of email was produced to
> us.  The email that was produced to us appears to be email that was printed out in hard
> copy form and included in a file or otherwise attached to another document, such as an
> invoice.  As you know, the grand jury subpoena that was served upon [the Organization]

required that it produce all responsive documents, including electronically stored data and email.  Your client was required to search all of its electronic files for responsive records and email, even if the email was not actually printed out on a piece of paper and stored in a folder or filing cabinet or some other place.

We have obtained through our investigation from third parties and other sources numerous emails sent to or from your client that would fall well within the scope of the subpoena but which have not been produced to us by your client.  We need to understand why this email was not produced to us by [the Organization], and therefore request an explanation from your client.  Was a search of your client's computer hard drives and email servers conducted by a qualified data recovery expert?  If so, we need to understand the procedures that were employed to search for electronic evidence and where the searches were conducted.  If no search for electronic evidence was conducted, we need an explanation of why that is so.  In addition, in our experience, it is often the case that email and other electronic evidence that is deleted can often be recovered and restored.  FBI and IRS both have computer experts who are trained in the recovery of electronically stored communications and files, and I would like to get them involved in this process to ensure that all responsive evidence in your client's possession or control is searched for and produced to us.

In response to this letter, defendants LEONARD P. LUCHKO, MARK C. EISTER, and others, both known and unknown to the grand jury, intensified their efforts to delete e-mail and wipe computers related to the Organization.

> 65.    Just two days after the January 19, 2005 letter and subpoena were sent by government counsel to the Organization, on or about January 21, 2005, at approximately 9:08 a.m., defendant LEONARD P. LUCHKO sent an e-mail to the Executive Director, which began, "After our conversation yesterday I have been giving your situation some thought." LUCHKO then summarized the extensive wiping he had previously done on her computer at the Organization.  LUCHKO stated, "Now I would like to do the same thing to your computers at home and the shore but you are going to have to let me know if it is OK."  LUCHKO also addressed two things he said that the Executive Director should be worried about:

- 26 -

1) You have a lot of old files in you're my Documents folder on all of your machines. You should let me delete all of these files except the ones on the Card and you should then go through the My Documents folder and get rid of things you don't need!  You have some files that are a couple of years old!

2) You are still using a lot of Senate equipment and software.  3 laptops, 1 Desktop a printer plus all of your wireless equipment belongs to the Senate.  I am pretty sure the wireless equipment is not marked but the computers and printer are defiantly marked.  If they want to they can hassle you behind this because I think it is a crime for non senate people to use senate equipment isn't it?  The software I am not going to worry about if they are going to get that specific than they are going to find something else.

Remember I am just playing the devils advocate here I don't want you to get blindsided.

66.    Although no wipe of the Executive Director's computer and PC card was performed after the government's January 19, 2005 letter and subpoena, steps were taken at that time by defendant LEONARD P. LUCHKO and other persons, both known and unknown, to assure that no further wipe would be necessary.  Specifically, LUCHKO caused a SecureClean scan to be run on or about January 26, 2005, which provided LUCHKO and other persons involved in the conspiracy a snapshot of what would be found on the computer equipment.[6]

67.    Later on or about January 21, 2005, at approximately 3:49 p.m., defendant LEONARD P. LUCHKO sent an e-mail to defendant MARK C. EISTER entitled "One More

---

[6]    The following text is from the SecureClean program that details what the scan will do when executed.

SecureClean can scan your computer for data that has not been cleaned from your computer. By using the SecureClean Scanner, you can quickly determine what private information is hidden on your drives and where it is located. This tool is particularly useful in making sure that specific items have been securely erased following a Clean or a Quick Clean.

- 27 -

thing," which stated:  "Remember [Executive Director] her user name was [Executive Director's e-mail address] if you have anything remotely related to her a folder whatever PGP wipe it."

68.    On or about Monday, January 24, 2005, at approximately 2:16 p.m., defendant MARK C. EISTER wrote to defendant LEONARD P. LUCHKO, "I searched the system before I left for the day on Friday and there was no trace of the [Executive Director's] account to take care of; everything was already gone."

69.    On or about January 26, 2005, one week after the January 19 letter and subpoena was issued to the Organization and the same date on which a SecureClean scan was performed on the Executive Director's computer to determine what would be recoverable on it, defendant LEONARD P. LUCHKO wrote to the Executive Director, "I forgot to tell you that compacting your PST would not be necessary because of the WIPE I did on your PC the Secure Clean wipe cleans your PST file of all left over mail fragments."

70.    Also on or about January 26, 2005, defendant LEONARD P. LUCHKO sent another directive to all of the Senator's Philadelphia staff and the Organization's Executive Director instructing them to destroy all e-mail involving the Senator:

> This is a remainder to everyone to get rid of any mail you Received or Sent to [the Senator] I have also noticed that some of you have don't have your DELETED ITEMS set to empty when OUTLOOK closes this is OK but you have to make sure you empty it manually from time to time.  Also your mailbox needs to be COMPACTED after you have deleted a large amount of mail.  This procedure cleans up any traces of email that may still be residing in the space you just created by deleting your email.  I usually take care of this myself but if you happen to delete a large amount of mail let me know and I will do it immediately for you.

71.    On or about January 28, 2005, within less than three hours after the start of a meeting between counsel for the government, counsel for the Organization, and counsel for the

Executive Director to discuss the government's desire to conduct a forensic examination of the

Executive Director's computer in order to attempt to retrieve deleted e-mail and other stored

electronic communications, at approximately 1:26 p.m., defendant LEONARD P. LUCHKO

wrote to the Executive Director, "I am getting rid of this copy of your email file OK."

72.     On or about January 31, 2005, defendant LEONARD P. LUCHKO caused

his office computer at the Tasker Street office to be wiped using SecureClean.

73.     In an e-mail created on or about February 3, 2005, at approximately 7:46

p.m., defendant LEONARD P. LUCHKO wrote to defendant MARK C. EISTER, "I met with my

lawyer today and the FBI tomorrow if I were you I would make sure everything is clean on [the

Senator's] server they were asking me about our email where is the server etc."

74.     Seven minutes later, at approximately 7:53 p.m. on or about February 3,

2005, defendant LEONARD P. LUCHKO added, "They are looking for emails to and from

[Executive Director] and they are pissed because I wiped her PC and destroyed her old card.  I

thing their last gasp is email that might have been left on the server but she hasn't used [her

Senate e-mail address] since last February so I can't imagine anything from her is still around.

Right"

75.     At approximately 7:57 p.m. on or about February 3, 2005, defendant

MARK C. EISTER replied, "Should have PGP's this one and not the email about PGP v8.1.  I

will check out the new version.  [The Executive Director] has been gone a year and there is

nothing left of her.  I will go through the servers tonight to verify everything is looking good.

Give me an update tomorrow when you done with everything."  Defendant LEONARD P.

LUCHKO answered, "I see them at 2:45 so I will email you when I am out of there."

76.    The next day, on or about February 4, 2005, at approximately 10:12 a.m., defendant LEONARD P. LUCHKO wrote an e-mail to defendant MARK C. EISTER in which he stated, "[The Senator] will be in Harrisburg on Tuesday and Wednesday I need you to get a backup and compact his PST file OK."  EISTER responded: "OK.  I catch him as early as possible on Tuesday."[7]

77.    During a February 4, 2005 conference call involving, among others, defendant LEONARD P. LUCHKO, his counsel, FBI special agents, and government counsel, the purpose of which was to again discuss the government's desire to conduct a forensic examination of the Executive Director's computer and to discuss technical issues regarding the examination, LUCHKO stated that he had downloaded from the Internet a program that would enable him to attempt to recover deleted e-mail but did not at any time indicate that he had given instructions to the Senator's employees or the Executive Director to delete or destroy e-mail.

78.    As a result of this February 4, 2005 phone call, the Organization and its Executive Director agreed to permit an FBI forensic examiner to "image" or make an exact copy of the hard drive of the Executive Director's computer and PC card.

---

[7]    "Compacting a PST file" means deleting or emptying the items from the Deleted Items folder in order to permanently delete them.  A PST file is a database of e-mail files.  The e-mail files are records within the database and there is an index that points to each item. When an e-mail user empties the Deleted Items folder, the Microsoft Outlook program does not actually delete the e-mails; rather, it just deletes their listings from the index.  The e-mail is still in the PST, but unrecoverable because Microsoft Outlook cannot find it without the pointer in the index.  The space that each e-mail item takes up is called "whitespace."  When an e-mail user compacts a PST, the item is finally and permanently removed and the whitespace is recovered, thereby shrinking the size of the PST.

79.     On or about February 4, 2005, the same day of the conference call concerning the FBI's request to examine the Executive Director's computer in order to attempt to recover e-mail and other electronic evidence, defendant LEONARD P. LUCHKO caused the Senator's office computer on Tasker Street to be wiped using the SecureClean utility.

80.     On or about the next day, Saturday, February 5, 2005, defendants LEONARD P. LUCHKO and MARK C. EISTER discussed a problem with the Blackberry server.  At approximately 3:06 p.m., LUCHKO wrote:

> I met with the FBI on Friday they asked me who I worked for and what department.  They asked me questioned about the [the Organization's] network.  They asked me if I ever tried to recover mail from [the Executive Director's] PC and how much mail I was able to recover.  I have to meet with them on Wednesday night at [the Organization's offices] I think they are going to ghost [the Executive Director's] PC and try to recover email. Good Luck to them because they are going to need it.

81.     At approximately 3:14 p.m. on or about February 5, 2005, defendant MARK C. EISTER stated, in part, "As far as the FBI, glad to here they don't want to look at the server; yet.  I hope it stays that way."  At approximately 3:18 p.m., defendant LEONARD P. LUCHKO wrote:

> They can't look at are stuff without probable cause that is why they are questioning me and hassling [the Organization] they are looking for a way in.  I think they are going to be completely surprised when they check out [the Executive Director's] PC when they get a load of the Card setup and the Keystroke monitor detector's and Secure Clean Software along with PGP.  They aren't getting shit off that PC and once they look it over it's the last time anyone uses that PC who knows what they might try and slip in it or on it we are not taking any chances.

82.     On or about February 10, 2005, defendant LEONARD P. LUCHKO was present at the office of the Organization and observed an FBI forensic examiner make an image

of the hard drive of the Executive Director's computer and her PC card.  At approximately 10:59

p.m. that night, LUCHKO reported his observations directly to the Senator:

> Finished with the FBI for now they showed up about 7:10 PM.  There were 2 techs, Jim
> S., Jerald [the Executive Director's] lawyer and myself.  They wanted to image all of the
> computers but Jim and Gerald said no because they only asked for [the Executive
> Director's] so they imaged [the Executive Director's] computer and they imaged the
> Card.  Jim told them he wanted copied of everything they took at first they didn't want to
> give then up but they did Gerald [the Executive Director's] lawyer has the copies.  They
> finished up around 9 and then after they left I moved the computer into the closet and
> then went out to the trunk of my car and got [the Executive Director's] new computer and
> set it up I have her old card and will give it to her next week when she gets back from
> Florida.  I didn't want to leave it in the old computer because the closet I put it in wasn't
> locked.  I am off to the shore tomorrow to update your computers and wipe them as well I
> am also going to wipe the computers at Monmouth Ave.[8]

83.    On or about February 10, 2005, the Senator replied at approximately 11:04

p.m.: "OK TY.  Give [Executive Director] a NEW card as well since they may have screwed

with that as well.  Were you there when they did their work or did they do it in secret?  PA TY"

84.    The next morning, on or about February 11, 2005, at approximately 6:59

a.m., defendant LEONARD P. LUCHKO wrote to Person No. 1 about the Executive Director's

Blackberry:  "After you sync her BB this morning tell her I think you should wipe it as well

before the FBI ask for it."  Person No. 1 complied with this request.

85.    On or about February 11, 2005. Defendant LEONARD P. LUCHKO wrote

to the Senator at approximately 11:43 a.m.:

> I updated and wiped all of your computers at the shore including [the Executive
> Director]'s at Monmoth Ave.  I wasn't able to renew the virus software because I don't
> have the new subscriptions yet but yours doesn't expire for another 3 weeks and when I
> get the new subscriptions I will just come back down and take care of them.

---

[8]    "Monmouth Ave." is a reference to the Executive Director's shore house.

86.    On or about February 11, 2005, the Senator replied:

OK  I have had that renewal problem on a number of the computers that I use.  I think the one down here is up in a few days as well.  Don't we have one master subscription?

87.    On or about February 11, 2005, defendant LEONARD P. LUCHKO caused a SecureClean wipe to be performed on the computer utilized by the Executive Director at her shore house.

88.    On or about February 11, 2005, in an e-mail titled "Laptop Mania" and created at approximately 1:15 p.m., defendant LEONARD P. LUCHKO reported to Person No. 1 that the full wipe damaged the "Kenyon Ave laptop"[9] -- it "did the exact same thing [the Executive Director's] did they are both fucked!"

89.    On or about Saturday, February 12, 2005, defendant LEONARD P. LUCHKO wrote an e-mail to Person No. 1, with a copy to defendant MARK C. EISTER, explaining how he was planning to repartition the laptops to permit faster wipes.[10]  At approximately 8:36 p.m. that same day, in an e-mail exchange with EISTER, LUCHKO stated, "if I see one more laptop tonight I will go crazy I have been working on these things since last night almost done they are running really well now plus they are very clean . . . ."

90.    Defendant LEONARD P. LUCHKO caused the Senator's IBM laptop hard drive, which he kept at his residence in Philadelphia, to be wiped using SecureClean on February

_____

[9]    The Senator's home in Margate, New Jersey was located on Kenyon Avenue.

[10]    A computer hard disk may be "partitioned" into sections or drives.  Such drives on a Windows system are commonly referred to by letter, such as "C:", "D:", "E:," etc. "Repartitioning" is the process of creating or changing the size and sequence of partitions on the disk.

12, 2005 and February 16, 2005, dates which are just two days after the FBI imaged the

Executive Director's Organization computer and PC card and just two days before a search

warrant was executed at the Senator's Philadelphia district office.

91.     On or about February 18, 2005, defendant LEONARD P. LUCHKO

initiated a SecureClean wipe on his own office computer, and the program was running at the

time that a federal search warrant was executed at the Senator's district office in Philadelphia

seeking evidence of and concerning, among other things, deleted e-mail and electronic evidence.

92.     On or about February 19, 2005, just one day after a federal search warrant

was executed at the Senator's Philadelphia district office, defendant LEONARD P. LUCHKO

performed a PGP Free Space Wipe on the PC card that he kept at his home.

93.     On or about February 27, 2005, just nine days after the FBI and IRS

executed the search warrant at the Senator's district office and obtained the Senator's e-mail

exchange server from the State Capitol, defendant LEONARD P. LUCHKO sent an e-mail to

defendant MARK C. EISTER that stated in part, "The Boss told me that he doesn't want ANY

mail stored on our server in Harrisburg."  LUCHKO then described a proposed policy in which

EISTER would set up a procedure on the Senator's server that would delete any e-mail left on the

server for more than seven days.  In response to this e-mail, EISTER replied in part:

> . . . First off I want to say to you this is fucking ridiculous.  If this happens again they will
> still take the goddamn server on top of taking a whole fleet of computers as that is where
> the email really is spread out to. . . . I am a little pissed right now.  I don't like moving
> backward to accommodate paranoia.  Use fucking PGP and if you don't trust that then
> don't type it into a fucking computer.  That's the ONLY way to guarantee data safety;
> don't create the fucking data in the first place!

94.     On or about March 8, 2005, Person No. 4 wrote to defendant LEONARD

P. LUCHKO, Person No. 1, and defendant MARK C. EISTER:

> Just got back from seeing him:
> Roe and Chris -
> they are to keep their mail popped to their card. [The Senator] assumes they use it
> EXACTLY as he does - where at all locations they use their card - on their laptop, on
> their home pc and that NO mail is saved anywhere else.

95.     On or about March 18, 2005, defendant LEONARD P. LUCHKO wrote an

e-mail to defendant EISTER stating that he wiped the Blackberry of Person No. 6, who is one of

the Senator's legislative assistants in Philadelphia who had some involvement in matters that are

relevant to this investigation.

96.     On or about March 21, 2005, Person No. 4 sent an e-mail to three of her

subordinates in SDCS describing an "Email Project" that the Senator wanted her to undertake:

> The email project has taken a turn.  Here are the new specs, as per [the Senator].
> 1) I am to talk individually to each Senator.  Each Senator will determine what their
> retention period is suppose to be.
> 2) [The Senator] wants a guarantee that all mail that is deleted cannot be recovered. - that
> means we have work to do - because from what I understand, if you delete it, but the
> recipient doesn't, or vice versa, it is still really there - so, how do we accomplish his
> demand????
> Lenny apparently does a purge - total wipe - of his server so that things that are deleted
> are actually gone and can't be recovered - [the Senator] wants assurance that this is also
> the case with email deleted off the GW system.

97.     On or about March 23, 2005, defendant MARK C. EISTER sent an e-mail

to the Senator, with a copy to defendant LEONARD P. LUCHKO, Person No. 1, and Person No.

4, stating that he had been researching security for the e-mail server.  EISTER explained that a

complete wipe of e-mail takes time, requires the server to be offline for a portion of the time, and

slows down the system for anywhere from 8-24 hours.  EISTER suggested that he do this weekly,

- 35 -

on the weekend.  LUCHKO replied to EISTER and the Senator, with a copy to Person No. 1 and

Person No. 4:

> I agree with Mark on a PGP free space wipe once a week.  Doing PGP wipe on a daily basis just isn't practical.  You have to remember just what a PGP free Space wipe entails you are literally overwriting the entire hard drive 7 times you do that every day and your hardware just will not take it.  We did a once a week PGP free space wipe at Tasker street and it worked fine our main vulnerability was that we had to manually check to make sure [the Senator's] mail was deleted and not stored on the server.  This problem is being addressed with the auto delete of [the Senator's] mail feature.  I don't know a lot about this FBI investigation but from what I have observed is the FBI are not looking for mail that was sent this week or last week or even last month but from 2002.  If we are wiping the server once a week and the [the Senator's] mail is getting auto deleted then the only mail they are going to get is going to be under a week old is it perfect no but I don't think you can get perfect and be practical.

98.    Defendants LEONARD P. LUCHKO, MARK C. EISTER, Person No. 1,

and other persons, both known and unknown, continued to delete e-mail and wipe computers and

other electronic devices of the Senator and members of his staff for months after the execution of

the search warrant at the Senator's district office.

99.    Defendant LEONARD P. LUCHKO caused the Senator's desktop and

laptop computers that were maintained at his shore house on Kenyon Avenue in Margate, New

Jersey to receive operating system upgrades to Microsoft Windows XP on or about June 14, 2005

(laptop) and on or about August 3, 2005 (desktop) that resulted in a complete wipe of the hard

drives and which therefore made it impossible to determine when or if earlier wipes had been

performed.

100.    Defendant LEONARD P. LUCHKO caused the Senator's desktop

computer that he used at his vacation home in Florida to receive a Microsoft Windows XP

upgrade on or about June 14, 2005 that resulted in a complete wipe of the hard drive and therefore made it impossible to determine when or if earlier wipes had been performed.

101.    Defendant LEONARD P. LUCHKO caused one of the Senator's PC cards to be wiped using the SecureClean utility on or about June 17, 2005.

102.    On or about September 2, 2005, defendant LEONARD P. LUCHKO wiped a laptop computer, which was later seized by the FBI from his home, using the SecureClean wipe utility.

103.    On or about October 20, 2005, and in the preceding months, defendant LEONARD P. LUCHKO concealed inside of his home in Collingdale, Pennsylvania certain Senate computer equipment and other electronic evidence that had been subpoenaed (but never received) by the grand jury and which had been sought by the FBI and IRS during the search of the Senator's district office on February 18, 2005, including 6 PC cards, LUCHKO's Blackberry device, and LUCHKO's Senate issued laptop computer.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.       Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.       On or about December 1, 2003, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

corruptly persuaded, attempted to corruptly persuade, and engaged in misleading conduct toward approximately 24 members of the Senator's staff and Senate contractors, including the Executive Director of the Organization, by sending to these persons an e-mail communication, a copy of which also was sent to the Senator, that instructed each person to delete all e-mail communications to and from the Senator, with the intent to cause and induce all of these persons to alter, destroy, mutilate, and conceal e-mail communications to and from the Senator with the intent to impair the integrity and availability of the e-mail communications and other electronic evidence for use in a federal grand jury investigation.

In violation of Title 18, United States Code, Sections 1512(b)(2)(B) and 2.

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.      On or about January 25, 2004, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

corruptly persuaded, attempted to corruptly persuade, and engaged in misleading conduct toward approximately 29 members of the Senator's staff and Senate contractors, including the Executive Director of the Organization, by sending to these persons an e-mail, a copy of which also was sent to the Senator, that instructed each person to, among other things, "set up a time with [Person No. 1] or myself so we can wipe" the Blackberry communications devices used by these persons and also to "set up a time with [Person No. 1] or myself so we can run security updates" on the Senate issued laptops used by these persons, with the intent to cause and induce all of these persons to alter, destroy, mutilate, and conceal e-mail communications to and from the Senator and other electronic evidence with the intent to impair the integrity and availability of these e-mail communications and other electronic evidence for use in a federal grand jury investigation.

In violation of Title 18, United States Code, Sections 1512(b)(2)(B) and 2.

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

      2.     On or about April 6, 2004, in the Eastern District of Pennsylvania, the defendant

## LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to Person No. 8, Person No. 9, and the Senator, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

      In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

      2.     On or about May 10, 2004, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

corruptly persuaded, attempted to corruptly persuade, and engaged in misleading conduct toward Person No. 5, by sending to this person an e-mail communication that instructed Person No. 5 that he must delete all e-mail communications to and from the Senator, with the intent to cause and induce Person No. 5 to alter, destroy, mutilate, and conceal e-mail communications to and from the Senator with the intent to impair the integrity and availability of the e-mail communications and other electronic evidence for use in a federal grand jury investigation.

      In violation of Title 18, United States Code, Sections 1512(b)(2)(B) and 2.

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

      2.     On or about June 10, 2004, in the Middle District of Pennsylvania, the defendant

### MARK C. EISTER

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to EISTER, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

      In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

      2.      On or about June 11, 2004, in the Eastern District of Pennsylvania, the defendant

## LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to LUCHKO, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

      In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.      On or about June 14, 2004, in the Middle District of Pennsylvania, the defendant

### MARK C. EISTER

corruptly persuaded, and attempted to corruptly persuade, and engaged in misleading conduct toward the members of the Senator's staff in Harrisburg, by instructing the staff members that they must delete all e-mail communications to and from the Senator and that they must take steps to ensure that such e-mail is permanently deleted, with the intent to cause and induce the Senator's Harrisburg staff members to alter, destroy, mutilate, and conceal e-mail communications to and from the Senator with the intent to impair the integrity and availability of the e-mail communications and other electronic evidence for use in a federal grand jury investigation.

In violation of Title 18, United States Code, Sections 1512(b)(2)(B) and 2.

## COUNT NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.     Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

       2.     On or about June 14, 2004, in the Middle District of Pennsylvania, the defendant

### MARK C. EISTER

corruptly aided and abetted the alteration, destruction, mutilation and concealment of records, documents, and other objects, that is, e-mail communications to and from the Senator that were stored on computer equipment issued to and used by the Senator's staff members in Harrisburg, with the intent to impair the integrity and availability of the e-mail communications for use in a federal grand jury investigation.

       In violation of Title 18, United States Code, Sections 1512(c)(1) and 2.

## COUNT TEN

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

      2.     On or about June 14, 2004, in the Middle District of Pennsylvania, the defendant

### MARK C. EISTER

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, e-mail communications to and from the Senator that were stored on computer equipment issued to or used by the Senator's staff members in Harrisburg, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

      In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT ELEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.      On or about June 14, 2004, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

corruptly persuaded, attempted to corruptly persuade, and engaged in misleading conduct toward Person No. 5, by sending to this person an e-mail communication that instructed Person No. 5 that he must delete all e-mail communications to and from the Senator, with the intent to cause and induce Person No. 5 to alter, destroy, mutilate, and conceal e-mail communications to and from the Senator with the intent to impair the integrity and availability of the e-mail communications and other electronic evidence for use in a federal grand jury investigation.

In violation of Title 18, United States Code, Sections 1512(b)(2)(B) and 2.

## COUNT TWELVE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.     On or about August 6, 2004, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to LUCHKO, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT THIRTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

      2.     On or about August 6, 2004, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to and used by the Executive Director of the Organization, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

      In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT FOURTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.    On or about August 26, 2004, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

corruptly persuaded, attempted to corruptly persuade, and engaged in misleading conduct toward the Senator's chief-of-staff in Philadelphia and Person No. 13, by sending to the Senator's chief-of-staff an e-mail communication that notified the chief-of-staff that Person No. 13 was not deleting all of her e-mail communications to and from the Senator and that requested that the chief-of-staff communicate with Person No. 13 to ensure that Person No. 13 deleted all of her e-mail communications to and from the Senator, with the intent to cause and induce the Senator's chief-of-staff and Person No. 13 to alter, destroy, mutilate, and concealed e-mail communications to and from the Senator with the intent to impair the integrity and availability of the e-mail communications and electronic evidence for use in a federal grand jury investigation.

In violation of Title 18, United States Code, Sections 1512(b)(2)(B) and 2.

- 50 -

## COUNT FIFTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.      On or about October 28, 2004, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

corruptly persuaded, attempted to corruptly persuade, and engaged in misleading conduct toward approximately 24 members of the Senator's staff and Senate contractors, including the Executive Director of the Organization, by sending to these persons an e-mail communication that instructed each person that, "under no circumstances" were they, without the approval of the Senator, permitted "to save any email in your IN box or Sent Items that is sent to or received from [the Senator]," and also instructing each person to "[m]ake sure you clean out your 'Deleted Items' as well," with the intent to cause and induce these persons to alter, destroy, mutilate, and conceal e-mail communications to and from the Senator and other electronic evidence with the intent to impair the integrity and availability of these e-mail communications and other electronic evidence for use in a federal grand jury investigation.

In violation of Title 18, United States Code, Sections 1512(b)(2)(B) and 2.

## COUNT SIXTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2. On or about December 9, 2004, in the Eastern District of Pennsylvania, the defendant

## LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to and used by the Executive Director of the Organization, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT SEVENTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

      2.    On or about December 30, 2004, in the Eastern District of Pennsylvania, the defendant

## LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to Person No. 8 for her use at the Senator's district office, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

      In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT EIGHTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.     On or about January 21, 2005, in the Eastern District of Pennsylvania, the defendant

## LEONARD P. LUCHKO

corruptly persuaded, attempted to corruptly persuade, and engaged in misleading conduct toward the Executive Director of the Organization, by sending to this person an e-mail communication that, among things, advised her that LUCHKO wanted her to let LUCHKO wipe her computers at her home and at her New Jersey vacation home, advised her that she has "a lot of old files" in her "Documents folder" on all of her machines, requested that she permit LUCHKO to "delete all of these files except the ones on the Card," and suggested that she "then go through the MY Documents folder and get rid of things you don't need!," with the intent to cause and induce the Executive Director to alter, destroy, mutilate, and conceal e-mail communications to and from the Senator, along with other electronic evidence, with the intent to impair the integrity and availability of the e-mail communications and other electronic evidence for use in a federal grand jury investigation.

In violation of Title 18, United States Code, Sections 1512(b)(2)(B) and 2.

- 54 -

## COUNT NINETEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.     On or about January 21, 2005, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

corruptly aided and abetted the alteration, destruction, mutilation and concealment of records, documents, and other objects, that is, computer files and other electronic evidence held on computer equipment issued to and used by the Executive Director of the Organization, with the intent to impair the integrity and availability of that evidence for use in a federal grand jury investigation.

In violation of Title 18, United States Code, Sections 1512(c)(1) and 2.

## COUNT TWENTY

**THE GRAND JURY FURTHER CHARGES THAT:**

1.       Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.       On or about January 21, 2005, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, computer files and other electronic evidence that was stored on computer equipment issued to or used by the Executive Director of the Organization, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT TWENTY-ONE

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.      Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

       2.      On or about January 26, 2005, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

corruptly persuaded, attempted to corruptly persuade, and engaged in misleading conduct toward approximately 19 members of the Senator's staff, including the Executive Director of the Organization, by sending to these persons an e-mail communication that instructed, among other things, that each person must "get rid of any mail you Received or Sent to [the Senator]," and must manually empty their deleted e-mail items folder in order to "clean[] up any traces of email that may still be residing in the space you just created by deleting your email," with the intent to cause and induce these persons to alter, destroy, mutilate, and conceal e-mail communications to and from the Senator and other electronic evidence with the intent to impair the integrity and availability of these e-mail communications and other electronic evidence for use in a federal grand jury investigation.

       In violation of Title 18, United States Code, Sections 1512(b)(2)(B) and 2.

## COUNT TWENTY-TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.     On or about January 28, 2005, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, an e-mail file that was stored on computer equipment issued to the Executive Director of the Organization, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT TWENTY-THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.      On or about January 31, 2005, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to and used by LUCHKO, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT TWENTY-FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.     On or about February 4, 2005, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to the Senator for his use at the Senator's district office, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT TWENTY-FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.     Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

       2.     On or about February 11, 2005, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

corruptly persuaded, attempted to corruptly persuade, and engaged in misleading conduct toward Person No. 1, by sending to this person an e-mail communication that, among things, instructed him that, "[a]fter you sync her [i.e. the Executive Director's] BB this morning tell her I think you should wipe it as well before the FBI ask for it," with the intent to cause and induce Person No. 1 to alter, destroy, mutilate, and conceal e-mail communications to and from the Senator, along with other electronic evidence, with the intent to impair the integrity and availability of the e-mail communications and other electronic evidence for use in a federal grand jury investigation.

       In violation of Title 18, United States Code, Sections 1512(b)(2)(B) and 2.

## COUNT TWENTY-SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.     On or about February 11, 2005, in the District of New Jersey, the defendant

### LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to the Senator for his use at the Senator's vacation home in New Jersey, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT TWENTY-SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.    On or about February 11, 2005, in the District of New Jersey, the defendant

### LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to the Executive Director of the Organization for her use at her vacation home in New Jersey, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT TWENTY-EIGHT

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.      On or about February 12, 2005, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to the Senator for his use at his residence in Philadelphia, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT TWENTY-NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

      2.    On or about February 16, 2005, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on computer equipment issued to the Senator for his use at his residence in Philadelphia, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

      In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT THIRTY

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.     On or about February 19, 2005, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on a PC card issued to and used by LUCHKO, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT THIRTY-ONE

**THE GRAND JURY FURTHER CHARGES THAT:**

         1.      Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

         2.      On or about March 18, 2005, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on a Blackberry communications device issued to and used by Person No. 6, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

        In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT THIRTY-TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.      On or about June 17, 2005, in the Eastern District of Pennsylvania, the defendant

**LEONARD P. LUCHKO**

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on a PC card issued to and used by the Senator, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT THIRTY-THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

2.      On or about September 2, 2005, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

knowingly altered, destroyed, mutilated, and concealed records, documents, and tangible objects, that is, data held on a laptop computer issued to and used by LUCHKO, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

In violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT THIRTY-FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

     1.    Paragraphs 1 through 22 at pages 1 through 6 and paragraphs 1 through 103 at pages 7 through 37 of Count One are incorporated here by reference.

     2.    On or about October 20, 2005, in the Eastern District of Pennsylvania, the defendant

### LEONARD P. LUCHKO

knowingly concealed records, documents, and tangible objects, that is, 6 PC cards containing electronic files of Senate staff members, LUCHKO's Blackberry device, and LUCHKO's Senate issued laptop computer, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and the Internal Revenue Service, which are agencies of the United States.

     In violation of Title 18, United States Code, Sections 1519 and 2.


                **A TRUE BILL:**


                _____
                **GRAND JURY FOREPERSON**


_____
**PATRICK L. MEEHAN**
**UNITED STATES ATTORNEY**