IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-0319 |
| | : | |
| v. | : | (Judge Yohn) |
| | : | |
| LEONARD P. LUCHKO | : | |
| MARK C. EISTER | : | |

**DEFENDANT LEONARD P. LUCHKO'S SUPPLEMENTAL MEMORANDUM OF
LAW IN OPPOSITION TO GOVERNMENT'S MOTION FOR HEARING REGARDING
POSSIBLE CONFLICTS OF INTEREST**

At the October 12, 2006, hearing scheduled in response to the government's motion

for hearing regarding possible conflicts of interest, the Court directed the parties to provide

supplemental briefs discussing the legal ramifications, vis-à-vis potential conflicts of interest, of

a trust fund paying legal fees for a criminal defendant.  Defendant Leonard P. Luchko, through

his counsel, James C. Schwartzman, Esquire, files this memorandum of law pursuant to the

Court's direction and in response to the government's supplemental brief.

Despite conceding that "the establishment of legal defense funds has become

commonplace in high-profile investigations or prosecutions of public malfeasance,"

[Government's Supplemental Brief Regarding Possible Conflicts of Interest at 2], the

government was unable to find even a single case to support its conclusion that the proposed

payment of Luchko's legal fees by such a trust fund would result in a conflict of interest.  Indeed,

the government failed to discuss the propriety of legal defense trust funds whatsoever.  Rather,

the government's supplemental brief simply rehashes the same arguments asserted (and many of

the same non-trust fund cases discussed) in the government's initial brief.

Like the government, after researching the issue, the undersigned has been unable to

locate any *relevant* cases regarding conflicts of interest allegedly arising from payment of legal

1

fees by a legal defense trust fund.[1]  However, taking into account basic Pennsylvania trust law, it is clear that payment by a trust fund (regardless of the identity of its trustees) would not violate Pennsylvania Rule of Professional Conduct 1.8(f).  The few new cases the government cites do not require a different conclusion.

The government's unsupported opinions regarding the alleged "obvious reasons" for establishment of the trust fund are simply insufficient to satisfy the government's heavy burden to justify depriving Luchko of his constitutional right to counsel of his choice.  Indeed, the government does not advocate disqualification of the undersigned.  Instead, the government recommends that the Court use its discretion to accept Luchko's knowing and intelligent waiver of any potential conflict.

While this brief arrives at the same ultimate conclusion as the government – the undersigned counsel should not be disqualified – its reasoning is different.  Simply put, there is neither an actual conflict of interest nor a serious potential for a conflict of interest justifying disqualification.

**ARGUMENT**

Rule 1.8(f) of the Pennsylvania Rules of Professional Conduct governs an attorney's ethical obligations in circumstances where a third-party pays the legal fees incurred by the attorney's client.  Rule 1.8(f) applies whether the third-party payor is the client's employer, a family member, a trust fund or otherwise.  At this point, Schwartzman *has not* submitted any of

---

[1] The issue was raised for the first time on appeal in *United States v. Venske*, 296 F.3d 1284, 1289 (11th Cir. 2002), but was not decided (or even discussed) because the record was not sufficiently developed for review.  *United States v. Newton*, 623 F.3d 253, also involved allegations of conflict of interest because an attorney allegedly received payment from a legal defense fund.  However, the money in the fund in *Newton* was the product of an illegal sale of forty kilograms of cocaine.  The alleged conflict was not that the trust fund or the parties funding it influenced the attorney's representation of the defendant.  Rather, the defendant alleged the attorney may have tempered his cross examination of a witness out of fear the witness would disclose the attorney accepted drug money as compensation for his representation of the defendant.  *Id.* at 263.  Obviously, these same concerns do not exist here.  Thus, neither of these cases are instructive.

Luchko's legal bills to or accepted any payments from the trust fund. As stated in the initial brief in opposition to the government's motion, the undersigned will not do so unless and until compliance with Rule 1.8(f) can be assured.

Rule 1.8(f) provides:

> A lawyer shall not accept compensation for representing a client from one other than the client unless:
>
> (1)    the client gives informed consent;
>
> (2)    there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
>
> (3)    information relating to representation of a client is protected as required by Rule 1.6.[2]

PA. R. PROF. CONDUCT 1.8(f). Following the colloquy wherein the Court posed a "worst case scenario" to Luchko (*i.e.*, what if the Senator is the individual funding or promoting the trust fund?), Luchko knowingly and intelligently consented to Schwartzman accepting payment of legal fees from the trust fund. Schwartzman has now determined that payment of Luchko's fees by the trust fund would fully comply with Rule 1.8(f). Blind speculation aside, the government has not presented any evidence to the contrary.

Schwartzman's acceptance of fees from the trust fund would fully comply with Rule 1.8(f). First, Schwartzman assessed the factual, legal and ethical implications of accepting

---

[2] In pertinent part, Rule 1.6 provides:

> A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c).

PA. R. PROF. CONDUCT 1.6(a). The exceptions set forth in subparagraphs (b) and (c) do not apply here.

SL1 675354v1/100192 00001

payment of Luchko's legal fees from the trust fund. Specifically, Schwartzman determined the Senator *would not* be the person authorizing payments. Rather, payment by the fund, if any are made in the future, would be authorized and made by the independent trustees who have a fiduciary duty to Luchko, as beneficiary of the trust. *See* RESTATEMENT (THIRD) OF TRUSTS § 170 (describing a trustee's fiduciary obligations to the beneficiaries of a trust). As aptly stated by the Superior Court of Pennsylvania:

> In general, '[t]he trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary.' The rule prohibits both self-dealing and conflicts of interest. Thus, the trustee must neither 1) deal with trust property for the benefit of himself or third parties, nor 2) place himself in a position inconsistent with the interests of the trust.

*In re Paxson Trust I*, 893 A.2d 99, 121 (Pa. Super. 2006) (emphasis added) (citations omitted).

Moreover, despite the government's baseless speculation that the trustees would serve the interests of the Senator rather than the interests of Luchko, a beneficiary of the trust (as the trustees are legally obligated to do), no principled reason exists to believe the trustees would disregard their legal obligations as trustees and act for the Senator's behalf. In fact, in addition to the fact two of the trustees are themselves accomplished attorneys (and all three are respected members of the community), the trustees are represented by a well-respected independent counsel who will, no doubt, insure the trustees understand precisely to whom their fiduciary obligations are owed as trustees of the trust fund.

Moreover, while Schwartzman, to this point, has had no contact with the trust or its trustees in connection with this case, Schwartzman has determined he will not accept any fees from the trust fund if the trustees condition payment upon Schwartzman rendering any particular advice to Luchko or favoring any certain legal position. Accordingly, Schwartzman concluded

4

that payment of Luchko's legal fees by the trust fund would in no way interfere with his "independence of professional judgment or with the client-lawyer relationship." *See* PA. R. PROF. CONDUCT 1.8(f)(2); *see also id. comments* (stating that a lawyer is not prohibited from accepting payment from a third-party if "<u>the lawyer determines</u> that there will be no interference with the lawyer's independent professional judgment and there is informed consent from the client.") (emphasis added). Thus, the representation satisfies Rule 1.8(f)(2).

Second, Luchko has a fee agreement obligating Luchko (and Luchko alone) to pay fees incurred in defense of the instant matter. However, Schwartzman has discussed with Luchko the relevant factors necessary for Luchko to make an informed determination regarding whether Luchko wants to authorize the trust fund to pay any portion of his legal fees. Specifically, the undersigned explained (i) the trust fund would not exercise any control or influence over the representation, (ii) Schwartzman would not accept any fees from the fund if payment is conditioned on Luchko or Schwartzman taking any certain position in Luchko's defense, and (iii) Schwartzman has no duty or loyalty to the trust fund, the trustees or any contributors to or promoters of the fund (the identities of whom, if any exist, are at this point unknown to Schwartzman). Instead, Schwartzman has undivided loyalty to Luchko.

In addition to Schwartzman's discussion of the trust fund with Luchko, the Court (at the government's suggestion) engaged Luchko in a colloquy regarding a hypothetical "worst case scenario" concerning the trust fund. Having discussed all of the relevant factors with counsel and the Court, Luchko has given his informed consent for the trust fund to pay his legal bills. Thus, the representation satisfies Rule 1.8(f)(1).

Finally, Schwartzman has not revealed and will not reveal to the trust fund, the trustees or anyone else any information relating to his representation of Luchko except as

SL1 675354v1/100192.00001

specifically authorized by Luchko in accordance with Rule 1.6.  In fact, as stated above, Schwartzman has had no contact with the trust fund whatsoever to this point.  If the Court authorizes Schwartzman to accept payment of Luchko's legal fees from the trust fund, it is anticipated, as with the Senate, the only information Schwartzman would ever provide to the trust fund would be copies of invoices for legal services rendered with the descriptions of the services redacted.  Schwartzman has not and will not discuss with the trust fund or trustees any facts learned in the attorney-client relationship.  Thus, the representation also satisfies Rule 1.8(f)(3).

As shown above, payment of Luchko's fees by the trust fund would not violate Rule 1.8(f).  Even more importantly, however, there simply is no conflict of interest here.  Regardless of whether or not any ethical rules are violated, a conflict exists if the attorney's loyalties are divided between his client and another.  *See United States v. Moscony*, 927 F.2d 742, 750 (3d Cir. 1991).  Schwartzman's loyalty is not divided.  Luchko enjoys Schwartzman's undivided loyalty on this matter and will continue to do so regardless of whether the trust fund pays Luchko's legal fees.

The cases discussed in the government's supplemental brief do not require, or even support, a determination that payment of Luchko's legal fees by the trust fund would result in a conflict of interest.  The first case discussed in the government's brief is *Wood v. Georgia*, 450 U.S. 261, 269 (1981).  *Wood* was discussed at length in Luchko's initial brief in opposition.  [*See* Docket Entry No. 25 at 18-20].  Defendant's prior analysis of *Wood* applies equally here and there is no need to discuss the case further but to note *Wood* did not involve payment of fees by an independent trust fund with trustees owing a fiduciary duty to the beneficiary-client and, like the Senate, Schwartzman does not have an attorney-client relationship with or owe any duties to

the trust fund. Thus, *Wood* is both factually and legally distinguishable and does not control the Court's determination of whether a conflict exists here.

The government next discussed *United States v. Allen*, 831 F.2d 1487 (9th Cir. 1987), which it found "particularly instructive." Unfortunately, the government has apparently misapprehended *Allen*. The facts leading to the Ninth Circuit's conclusion that certain of the defendant's attorneys suffered from a "glaring" conflict of interest, are readily distinguishable from this case. In fact, if anything, *Allen* supports a conclusion that no conflict exists here.

A proper understanding of the facts and procedural posture is pertinent to a proper understanding of the Court's holding. *Allen* involved an appeal of the denial of Mr. Allen's habeas petition after he was convicted of various drug offenses. Mr. Allen alleged his conviction and sentence were the product of ineffective assistance of counsel because of a conflict of interest. The Ninth Circuit did not even consider the source of payment of the defendant's attorneys' fees in formulating the question presented:

> [W]hether petitioner Arthur Allen was denied effective assistance of counsel due to unwaived conflicts of interest inherent in [the law firm's] simultaneous representation of Allen, his co-defendant and boss Charles Minnig, and the unindicted 'generals' of the smuggling operation.

*Id.* at 1489. The Court held that "although [the law firm's] pre-trial representation of Allen bordered on a failure to comply with sixth amendment requirements, Allen was not denied effective assistance of counsel at trial and sentencing." *Id.*

Mr. Allen was one of seventeen co-defendants represented by the same law firm. Several of the drug operation's bosses had a long standing relationship with the law firm and retained the law firm to represent the seventeen members of the operation. At the outset of the criminal prosecutions an unidentified person delivered large sums of cash to the law firm's

offices which was used to defend the seventeen co-defendants. *See id.* at 1490. During the pre-trial phase of the prosecution, the law firm retained "separate" counsel for each of the seventeen co-defendants and paid their fees with the cash previously received. Attorney Cullen was retained to represent Mr. Allen and was paid $10,000 by a check drawn on the law firm's account, made out to one of Allen's co-defendants and then endorsed over by the co-defendant to Cullen. *Id.* at 1491.

Despite having "separate" counsel, the law firm "called the shots" for all co-defendants throughout the pre-trial stages. In fact, Cullen was not even present at the plea negotiations. *Id.* at 1491-92. As part of joint plea negotiations on behalf of all seventeen of its co-defendant clients, the law firm created and presented a "culpability chart" wherein the law firm knowingly, *incorrectly* ranked the defendants by what the law firm asserted was their "relative culpability." *See Allen*, 831 F.2d at 1495-96. Due to its conflicting duties to its numerous clients, the law firm suffered from an actual conflict of interest in representing Mr. Allen during the pre-trial stages of his prosecution. *Id.* at 1496-97.

Ultimately, however, the law firm stepped aside and Cullen and another attorney, Attorney Topel, represented Mr. Allen at trial. The district court adopted the magistrate judge's conclusion that Mr. Allen's trial counsel provided "genuinely independent counsel." *Id.* at 1503. The magistrate judge found "Cullen provided adequate representation to petitioner while serving as his counsel and that Cullen's independent judgment was not tainted by the alleged intimidation and alleged conflict of interest in the joint defense." *Id.* Reviewing the factual record, the Ninth Circuit found "[t]here is no other indication that Cullen's and Topel's representation of Allen at trial and sentencing was anything but independent, vigorous and effective." *Id.* Thus, the Court held that, despite the law firm's actual conflict of interest and

8

despite the fact Cullen was paid by the law firm, Cullen's and Topel's representation of

Mr. Allen at trial did not violate Mr. Allen's Sixth Amendment right to independent counsel. *Id.*

Detailed analysis of the facts is unnecessary to determine that Schwartzman's

representation of Luchko is in no way similar to the law firm's representation of the seventeen

co-defendants in *Allen*. Contrary to the government's suggestion, *Allen* is not the least bit

instructive or in any way responsive to the Court's request for supplemental briefing regarding

the payment of legal fees by a trust fund.

The other cases cited by the government are similarly non-instructive. For example,

in both *Amiel v. United States*, 209 F.3d 195 (2d Cir. 2000), and *Moore v. United States*, 950

F.2d 656 (10th Cir. 1991), the attorney was paid by a *third-party with interests adverse to the

defendants-client*; not by a trust fund with *fiduciary obligations to the defendant-client* and its

own independent counsel to help insure compliance with those duties. Moreover, in both cases,

the attorney affirmatively demonstrated that he had divided loyalties. In *Amiel*, the attorney

allegedly refused to allow the defendant to testify stating: "[I]f you testify, your mother will go

to jail. If you testify, you won't be convicted, but I [appellant's counsel] have to think of your

mother."[3] *Amiel*, 209 F.3d at 197 n.1. Similarly, in *Moore*, the defendant alleged that his

attorney instructed him to perjure himself to protect the third-party who was paying the

attorney's fees. *See Moore*, 950 F.2d at 658. The Court did not find that a conflict of interest

existed. Rather, the Court merely held the defendant was entitled to a hearing on his allegations

of conflict of interest, at which the attorney would get an opportunity to be heard. *Id.* at 660-61.

---

[3] Although it is somewhat unclear from the opinion, the attorney in *Amiel* may have actually represented both defendant and her mother/co-defendant who was paying the legal bills. If this is the case, the attorney's breach of duty to the defendant is more likely an example of an attorney choosing to help the more culpable client to the detriment of the other than an example of an attorney protecting the person paying the fees.

Again, neither of these case involved payment of legal fees by a trust fund with trustees owing a fiduciary obligation to the defendant-client.

The final case cited by the government that deserves discussion is *Triana v. United States*, 205 F.3d 36 (2d Cir. 2000). It is unclear why the government cited *Triana*: it is not factually on point and certainly does nothing to bolster the government's case. Rather, if anything, *Triana* supports a conclusion that no conflict exists here.

*Triana* involved the prosecution of a defendant involved in the Columbian drug trade. For unknown reasons, one of the defendant's attorneys, Attorney Levine, placed a call to a telephone number in Columbia and spoke to an unidentified person who said "they were helping Mr. Triana out on the case." *Id.* at 39. Levine asked the unidentified person to wire $50,000 to a bank account to help start the defense. Levine never discussed the facts or strategy of the case with the unidentified payor or had any continuing interest in the source of the funds once paid. *Id.* The Court found that "Triana fail[ed] to adduce evidence that Levine had any conflict of interest." *Id.* at 42 (citations omitted). "Speculation is not enough." *Id.* (citations omitted).

Similarly, Schwartzman has not and will not discuss the facts or strategy of this case with the trust fund's trustees. Schwartzman does not know or have any interest in learning the identity of the trust fund's contributors or fundraisers. The fact the trust fund may in the future pay some portion of Luchko's legal fees will in no way interfere with Schwartzman's independence of professional judgment or with the client-lawyer relationship between Schwartzman and Luchko. *See* PA. R. PROF. CONDUCT 1.8(f)(2).

Plain and simple, Schwartzman is not laboring under a conflict of interest. Luchko has the undivided loyalty of his chosen counsel. There is no basis upon which the Court should disqualify Schwartzman and deprive Luchko of his counsel of choice. Indeed, the government

10

does not contend Schwartzman should be disqualified. The Court should determine that no actual or potential conflict exists and that Luchko has given his knowing and intelligent consent for Schwartzman to accept payment of Luchko's legal fees from the trust fund in accordance with Rule 1.8(f).

Respectfully submitted,

STEVENS AND LEE

Dated: October  26, 2006

By: _____
James C.  Schwartzman, Esquire
Pa. Attorney I.D. No. 16199
Todd J. Cook, Esquire
Pa. Attorney I.D. No. 89041
1818 Market Street, 29th Floor
Philadelphia, PA 19103
(215) 751-2863
Fax (215) 851-0214
jcsc@stevenslee.com
tjc@stevenslee.com

*Attorneys for Defendant Leonard P. Luchko*

11

## CERTIFICATE OF SERVICE

I, JAMES C. SCHWARTZMAN, ESQUIRE, hereby certify that on this date, I caused

to be delivered by electronic filing to the Clerk of Court (resulting in an e-mail copy sent to

counsel by the Clerk of Court), and by United States Mail, postage prepaid, a true and correct

copy of the foregoing DEFENDANT LEONARD P. LUCHKO SUPPLEMENTAL

MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S MOTION FOR

HEARING REGARDING POSSIBLE CONFLICTS OF INTEREST to the following:

John J. Pease, Esquire
Robert A. Zauzmer, Esquire
Assistant United States Attorneys
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106-4476

*Attorneys for the Government*

Dated:  October 26,  2006

Brian J. McMonagle, Esquire
McMonagle, Perri & McHugh
One Penn Square West
30 South 15th Street, Suite 701
Philadelphia, Pennsylvania 19102

*Attorneys for Defendant Mark C. Eister*

James C. Schwartzman

SL1 675354v1/100192 00001