# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 06-319 |
| VINCENT J. FUMO et al., | : | |
| Defendants. | : | |
| | : | |

## Memorandum and Order

YOHN, J.                                                            April ____, 2008

Presently before the court are motions filed by Vincent J. Fumo for (1) dismissal of
Counts 1 and 65 of the superseding indictment ("the indictment"), alleging conspiracy to commit
mail and wire fraud, for failure to sufficiently allege the offenses; and (2) dismissal or merger of
Counts 1, 65, and 99, on the basis that three conspiracies alleged in these counts—to defraud the
Pennsylvania Senate, Citizens Alliance for Better Neighborhoods ("Citizens Alliance"), and the
United States, respectively—actually constitute a single conspiracy.  The indictment alleges that
each conspiracy violated 18 U.S.C. § 371.[1]  Two of Fumo's codefendants, Ruth Arnao and
Leonard P. Luchko, have joined in Fumo's motion.

---

[1] The statute provides, in relevant part:

> If two or more persons conspire either to commit any offense against the
> United States, or to defraud the United States, or any agency thereof in any manner
> or for any purpose, and one or more of such persons do any act to effect the object
> of the conspiracy, each shall be fined under this title or imprisoned not more than five
> years, or both.

1

Fumo alone is charged in Count 1, which alleges that he conspired with others, including his codefendants Arnao, Luchko, and Mark C. Eister, from August 1991 to February 2007, to

> knowingly devise a scheme to defraud the Senate of the Commonwealth of Pennsylvania, and to obtain money and property of the Senate by means of false and fraudulent pretenses, representations, and promises, and to use the United States mails, commercial interstate carriers, and interstate wire communications to further the scheme to defraud.

(Ind. 4.)  Count 65 charges Fumo and Arnao, alleging that during the period from August 1991 to December 2005 they conspired with others to

> knowingly devise a scheme to defraud Citizens Alliance, and to obtain money and property of Citizens Alliance by means of false and fraudulent pretenses, representations, and promises, and to use the United States mails, commercial interstate carriers, and interstate wire communications to further the scheme to defraud.

(Ind. 92.)  Count 99 also charges Fumo and Arnao, alleging that between August 1999 and December 2005 they conspired with others to

> knowingly defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Department of the Treasury [("IRS")] in the ascertainment, computation, assessment, and collection of taxes.

(Ind. 175.)  Luchko is not charged in any of the three counts addressed by these motions.  For the following reasons, I will deny Fumo's motion to dismiss Counts 1 and 65, as well as his motion for dismissal or merger of Counts 1, 65, and 99.

## I.    Dismissal of Counts 1 and 65

Fumo argues that Counts 1 and 65, alleging conspiracy to commit mail and wire fraud on the Pennsylvania Senate and Citizens Alliance, respectively, must be dismissed because "they do

not allege that the agreed purpose of using the mails or wires was 'for the purpose of executing'
the alleged schemes." (Mem. in Support of Fumo's Mot. to Dismiss Counts 1 & 65, at 1.)

A motion to dismiss brought pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)
tests the sufficiency of an indictment. "An indictment is sufficient if it:  1) 'contains the
elements of the offense intended to be charged,' 2) 'sufficiently apprises the defendant of what he
must be prepared to meet,' and 3) allows the defendant to 'show[] with accuracy to what extent
he may plead a former acquittal or conviction' in the event of a subsequent prosecution." *United
States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989) (quoting *Russell v. United States*, 369 U.S.
749, 76364 (1962)).  "[A]n indictment is sufficient if it adequately informs the defendant of the
charges against him." *United States v. Turley*, 891 F.2d 57, 59 (3d Cir. 1989).

Mail or wire fraud occurs when the following are present:  (1) "a scheme to defraud," (2)
"the use of the mails in furtherance of the fraudulent scheme," and (3) "culpable participation by
the defendant." *United States v. Pearlstein*, 576 F.2d 531, 534 (3d Cir. 1978).[2]  The "in

---

[2] The mail fraud statute and the wire fraud statute are "in pari materia and are, therefore,
to be given similar construction." *United States v. Tarnopol*, 561 F.2d 466, 475 (3d Cir. 1977),
*abrogated on other grounds by Griffin v. United States*, 502 U.S. 46 (1991).  "[T]he cases
construing the mail fraud statute are applicable to the wire fraud statute as well." *Id.*  The mail
fraud statute, 18 U.S.C. § 1341, provides:

> Whoever, having devised or intending to devise any scheme or artifice to
> defraud, or for obtaining money or property by means of false or fraudulent
> pretenses, representations, or promises . . . for the purpose of executing such scheme
> or artifice or attempting so to do, places in any post office or authorized depository
> for mail matter, any matter or thing whatever to be sent or delivered by the Postal
> Service, or deposits or causes to be deposited any matter or thing whatever to be sent
> or delivered by any private or commercial interstate carrier, . . . or knowingly causes
> to be delivered by mail or such carrier according to the direction thereon, or at the
> place at which it is directed to be delivered by the person to whom it is addressed,
> any such matter or thing, shall be fined under this title or imprisoned not more than
> 20 years, or both.

furtherance" language of the second element satisfies the "for the purpose of executing" a scheme to defraud requirement of the statute. *See United States v. Bentz*, 21 F.3d 37, 40 n.3 (3d Cir. 1994) (explaining that an examination of "purpose" involves asking whether a mailing or wire transmission was "in furtherance" of a fraudulent scheme). To satisfy this element, the government need only prove that "use [of the mails or wires] can reasonably be foreseen, even though not actually intended." *Pereira v. United States*, 347 U.S. 1, 9 (1954).

"The elements of *conspiracy* to commit mail fraud . . . are (1) an agreement between two or more persons to commit mail fraud; (2) the defendant knowingly joined the conspiracy; and (3) one of the conspirators committed an overt act in furtherance of the conspiracy." *United States v. Gebbie*, 294 F.3d 540, 544 (3d Cir. 2002) (emphasis added). In *Turley*, the Third Circuit addressed "whether the government must prove an actual agreement to use the mails *in furtherance of* the scheme to defraud" and held that it need not. 891 F.2d at 59, 60 (emphasis added). The court reasoned:

> Because use of the mails is merely the jurisdictional element by which a state fraud offense is turned into the federal crime of mail fraud, we hold that specific intent to use the mails need not exist as an essential element of the scheme and that the intent adequate to prove the substantive offense, i.e., if the use of the mails can reasonably be foreseen, even though not intended, is also sufficient to prove a conspiracy to commit mail fraud.

Similarly, the wire fraud statute, 18 U.S.C. § 1343, provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

4

*Id.* at 60 (internal quotation and citation omitted).  Therefore, contrary to Fumo's assertion, an indictment alleging conspiracy to commit mail or wire fraud is sufficient absent allegations that the defendants agreed to use the mails or wires for the purpose of executing the alleged frauds. For this reason, I will deny Fumo's motion to dismiss Counts 1 and 65.[3]  To the extent that Arnao and Luchko have joined the motion, the motion is likewise denied as to them.

## II.      Dismissal or Merger of Counts 1, 65, and 99

Fumo argues that Counts 1, 65, and 99 are multiplicious, in that they "charge the same offense, a single conspiracy with various criminal objectives, in three separate counts."  (Mem. in Support of Fumo's Mot. to Dismiss or for Merger ("Merger Mem.") 3.)  Therefore, Fumo reasons, "two of the three conspiracy counts in this indictment should be dismissed, or the [c]ourt should rule that they merge as a matter of fact and law."  (*Id.* at 4.)

"Multiplicity is the charging of the same offense in two or more counts of an indictment or information."  *United States v. Stanfa*, 685 F.2d 85, 86-87 (3d Cir. 1982).  This is problematic because "a multiplicious indictment 'may lead to multiple sentences for a single violation.'"

---

[3] Although the indictment need not allege an agreement to use the mails or wires for purposes of executing the alleged fraudulent schemes, I note that the instant indictment does, in fact, make such allegations and therefore would sufficiently allege the conspiracy offenses even absent the Third Circuit's holding in *Turley*.

Count 1 alleges that Fumo "conspired and agreed, together with Ruth Arnao . . . , Leonard P. Luchko . . . , Mark C. Eister . . . , and with others known and unknown to the grand jury, . . . *to use the United States mails, commercial interstate carriers, and interstate wire communications to further the scheme to defraud*."  Ind. 4 (emphasis added).

Count 65 alleges similarly that Fumo and Arnao "conspired and agreed, together with each other, and with others known and unknown to the grand jury, . . . *to use the United States mails, commercial interstate carriers, and interstate wire communications to further the scheme to defraud*."  Ind. 92 (emphasis added).

*Stanfa*, 685 F.2d at 87 (quoting *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978)).

"Multiple sentences for a single violation are prohibited by the Double Jeopardy Clause." *Id.*

Generally, then, the test for multiplicity is the same as the test for violation of the Double

Jeopardy Clause: "whether proof of one offense charged requires an additional fact that proof of

the other offense does not necessitate." *Id.*; *see also United States v. Smith*, 82 F.3d 1261, 1266

(3d Cir. 1996) (noting that "the 'same evidence' test is normally used to ascertain whether

successive prosecutions charge the same crime").

When charged conspiracies are allegedly multiplicious, however, the "same evidence"

test is not the standard.  The Third Circuit recognized in *United States v. Liotard* that

> in a conspiracy case . . . , the same evidence test may not adequately protect the
> defendant's constitutional right against double jeopardy, unless it is tempered with
> the consideration that a single conspiracy may not be arbitrarily subdivided for the
> purposes of prosecution.  The danger is that successive indictments against a single
> defendant for participation in a single conspiracy might withstand same evidence
> scrutiny if the court places undue emphasis upon the evidence used to prove the
> commission of the overt acts alleged.

817 F.2d 1074, 1078 (3d Cir. 1978) (internal quotation, alteration, and citation omitted).

Therefore, the court adopted a "totality of the circumstances" approach to use when "evaluat[ing]

the merits of a conspiracy defendant's double jeopardy claim." *Id.*  Pursuant to this approach,

"the ultimate inquiry presented by conspiracy double jeopardy claims is whether there are two

agreements or only one." *Smith*, 82 F.3d at 1267; *see also United States v. Becker*, 892 F.2d 265,

268 (3d Cir. 1989) ("The critical determination is whether one agreement existed.").  To answer

this question, the court should analyze four factors:  "(a) the 'locus criminis' of the alleged

conspiracies;[4] (b) the degree of temporal overlap between the conspiracies; (c) the overlap of personnel between the conspiracies, including unindicted co-conspirators; and (d) the similarity in the overt acts charged and role played by the defendant in each indictment." *Smith*, 82 F.2d at 1267 (citing *Liotard*, 817 F.2d at 1078).

The court must "assure that the substance of the matter controls and not the grand jury's characterization of it." *Id.* Two separate conspiracies are likely to exist when "the evidence indicates that the activities of the alleged conspiracies are not interdependent or mutually supportive and that there are major participants in each conspiracy who lack knowledge of, or any interest in, the activities of the other." *Id.* at 1269. The defendant has the burden to make a "non-frivolous showing of double jeopardy." *Liotard*, 817 F.2d at 1079.

Count 1 alleges a conspiracy separate from that alleged in either Count 65 or Count 99. The locus criminis of the two conspiracies appears to be the same, and substantial "temporal overlap" does exist between the conspiracies. However, "[j]ust because the time periods of the . . . conspiracies overlapped does not indicate that only one conspiracy existed." *Becker*, 892 F.2d at 268. The personnel also overlap among the alleged conspiracies: In Count 1, Fumo allegedly conspired with Arnao, Luchko, Eister, and unnamed others. In Counts 65 and 99, however, only Fumo and Arnao allegedly conspired with unnamed others. But "a party can be involved in more than one conspiracy at one time." *Id.*

The overt acts charged in Count 1 do not overlap with the overt acts charged in Counts 65 and 99, however. Indeed, Fumo has pointed to only one example of overlapping overt acts:

---

[4] The locus criminis is the place where the crime was committed. *See Black's Law Dictionary* 959 (8th ed. 2004).

"paragraph 11 of Count 65 alleges an act (failure to disclose to [Citizens Alliance's] accountants certain alleged facts about how [Citizens Alliance's] funds were being used) that is directly within the scope (indeed, the heart) of the Count 99 conspiracy." (Merger Mem. 3.) Fumo does not point to alleged overt acts overlapping Count 1 and Counts 65 or 99.

Moreover, the conspiracy alleged in Count 1 is not interdependent on or mutually supportive of the conspiracies alleged in Counts 65 and 99, and the objects of the conspiracies are distinct.[5]  The object of the conspiracy alleged in Count 1 was to "systematically, routinely, and improperly use[] the funds and resources of the Senate for [Fumo's] personal and political benefit." (Ind. 4.) In furtherance of this object, Fumo allegedly "padded his staff . . . with superfluous employees . . . who performed little or no legitimate Senate work," "used the Senate staff in the Tasker Street office as campaign workers," and "used numerous Senate employees to attend to his many personal needs." (Ind. 5.) The indictment further alleges that he "overpa[id]

---

[5] Although the object of each alleged conspiracy could be stated broadly as "endeavor[ing] to gain personal benefits and gratuities from others, including entities over which he had influence" (Ind. 3), the Third Circuit does not look to the broadest statement of conspiracies' objects when evaluating whether they are multiplicious. For example, in the context of drug offenses, the Third Circuit has held that a conspiracy to grow marijuana is distinct from a conspiracy to distribute, sell, and buy marijuana. *See Becker*, 892 F.2d at 268. The Third Circuit cited in support of its conclusion the Seventh Circuit's decision that "there were two conspiracies where the first indictment was for a conspiracy to buy marijuana in Mississippi and the second involved a plan to smuggle marijuana from Colombia and distribute it in Indiana." *Id.* at 268-69 (citing *United States v. Chiattello*, 804 F.2d 415 (7th Cir. 1986)). The Seventh Circuit concluded that object of the conspiracies for purposes of the double jeopardy analysis was not "to make regular purchases of marijuana *from whatever source*, for distribution in the midwest," but was narrower. *Chiattello*, 804 F.2d at 419. The Third Circuit also cited a second Seventh Circuit opinion noting that "the guarantee against double jeopardy does not insulate a criminal for subsequent offenses merely because he chooses to continue committing the same type of crime." *Becker*, 892 F.2d at 269 (quoting *United States v. West*, 670 F.2d 675, 681 (7th Cir. 1982)). Thus, in the instant case it is appropriate to base the analysis on the narrower objects of the conspiracies stated in the indictment.

employees who did both official and personal tasks," ignored the Senate's pay classification system "in compensating certain employees on his staff," "abused his authority to use Senate funds to hire 'contractors' for legislative-related tasks," and "gave Senate contracts . . . to political consultants who assisted [him] in numerous political races." (Ind. 8-9.) He also allegedly "gave Senate equipment . . . to non-Senate employees, including girlfriends, family members, his personal valet, and Senate contractors, and then delegated Senate computer aides to assist those people as well as perform their Senate duties." (Ind. 6.) Thus, this alleged conspiracy involved only the Senate's contractors, employees, and funds.

In contrast to the conspiracy alleged in Count 1, the conspiracies alleged in Counts 65 and 99 used Citizens Alliance's employees and funds. They involved schemes "to obtain money and property of Citizens Alliance," an entity separate from the Senate, in Count 65, and "to prevent the IRS from ascertaining that Citizens Alliance engaged in political and other expenditures which are impermissible for a tax-exempt nonprofit organization," in Count 99. (Ind. 92, 176.) The allegations of the indictment thus suggest the Count 1 conspiracy to defraud the Senate constituted an agreement separate from that alleged in Counts 65 and 99. Fumo has not met his burden of making a non-frivolous showing that there was, in fact, only one agreement charged in multiple counts that would potentially subject him to double jeopardy. Therefore, I will deny Fumo's motion to merge Count 1 with either Count 65 or Count 99.

Likewise, Fumo has not met his burden of making a non-frivolous showing that there was only one agreement encompassing the activities alleged in Counts 65 and 99. First turning to the *Liotard* factors, it is again true that the locus criminis of the two conspiracies appears to be the same, and there is temporal overlap. Additionally, with respect to Counts 65 and 99, the

personnel involved—Fumo and Arnao—are identical.  However, the overt acts charged and the

"critical determination" of "whether one agreement existed," *Becker*, 892 F.2d at 268, again

show two separate conspiracies.

Count 65 alleges a conspiracy among Fumo, Arnao, and others to "obtain money and

property of Citizens Alliance," specifically by "us[ing] funds and resources of Citizens Alliance

for their personal benefit," "violat[ing] Citizens Alliance's status as a tax exempt nonprofit

organization," and depriv[ing] Citizens Alliance of funds which it could have used to carry out

its charitable mission."  (Ind. 92-93.)  In contrast, Count 99 alleges a conspiracy "to knowingly

defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the

lawful government functions of the [IRS] . . . in the ascertainment, computation, assessment, and

collection of taxes."  (Ind. 175.)  The "*Klein* conspiracy"[6] alleged in Count 99 requires "an

agreed-upon objective . . . to impede the IRS."  *United States v. Gricco*, 277 F.3d 339, 348 (3d

Cir. 2002) (citing *Ingram v. United States*, 360 U.S. 672, 679-80 (1959)).  To prove a *Klein*

conspiracy, the government must "prove there was an agreement whose purpose was to impede

the IRS (the conspiracy), and that each defendant knowingly participated in that conspiracy."

*United States v. McKee*, 506 F.3d 225, 239 (3d Cir. 2007).  Thus, the agreement alleged in Count

99 must necessarily be to impede the IRS, an agreement clearly separate from that alleged in

Count 65.[7]  Because Fumo has not met his burden of making a non-frivolous showing of only

---

[6]A *Klein* conspiracy is a conspiracy to defraud the United States by impeding, impairing, obstructing or defeating the lawful function of the IRS in collecting taxes.  *See United States v. Klein*, 247 F.2d 908, 915 (2d Cir. 1957).

[7] I note that impeding the IRS "need not be the sole or even a major objective of the conspiracy" and it "need not be an objective that is sought as an end in itself."  *Gricco*, 277 F.3d at 348.  Thus, a single conspiracy could, in theory, have as its objects both committing fraud and

one agreement both to commit fraud on Citizens Alliance and to impede the IRS, I will deny

Fumo's motion to merge Count 65 with Count 99.  Because Counts 1, 65, and 99 each allege a

separate conspiracy, with separate agreements, overt acts, and victims, I will also deny Fumo's

motion to dismiss two of the three conspiracy counts.[8]  To the extent that Arnao and Luchko have

joined the motion, the motion is likewise denied as to them.

An appropriate order follows.

_____

covering up that fraud by impeding the IRS.  Here, however, the indictment alleges two
conspiracies—one centering on an agreement to commit fraud and another centering on an
agreement to impede the IRS—and Fumo has not met his burden of showing that there was only
one agreement.

[8] As the government suggests, Fumo's current motion to dismiss or for merger of Counts
1, 65, and 99, on the basis of multiplicity, does seem in serious conflict with his previous motion
for severance or relief from prejudicial joinder wherein he argued that the separate conspiracies
involved such disparate facts that they required separate trials.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 06-319 |
| VINCENT J. FUMO et al., | : | |
| Defendants. | : | |
| | : | |

## Order

**AND NOW**, this _____ day of April 2008, upon careful consideration of Vincent J. Fumo's motion to dismiss Counts 1 and 65 for failure to allege an offense (Doc. No. 191), his motion to dismiss or for merger of Counts 1, 65, and 99 based on multiplicity (Doc. No. 189), and the government's response to both of the aforementioned motions, **IT IS HEREBY ORDERED** that Fumo's motion to dismiss Counts 1 and 65 and his motion to dismiss or for merger of Counts 1, 65, and 99 are **DENIED**.

**IT IS FURTHER ORDERED** that to the extent Ruth Arnao and Leonard P. Luchko have joined the motions, the motion to dismiss Counts 1 and 65 for failure to allege an offense and the motion to dismiss or for merger of Counts 1, 65, and 99 based on multiplicity are likewise denied as to them.

_____ s/ William H. Yohn Jr. _____
William H. Yohn Jr., Judge